Application of Leland C. CLARK, Jr.

Patent Appeal No. 75–505.

United States Court of Customs and Patent Appeals.

Sept. 25, 1975.

Rehearing Denied Nov. 20, 1975.

Joseph G. Nauman, Dayton, Ohio, attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from a decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of all claims remaining in an application to reissue a patent.[1] The examiner rejected the reissue application on three separate grounds and the board affirmed all three. We affirm.

The first ground was, speaking generally and in the words of the board, a rejection "(1) Under 35 U.S.C. 251," the statute authorizing reissue of defective patents. That statute reads, in pertinent part:

§ 251. *Reissue of defective patents*

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.

In his first action on the reissue application the examiner rejected all claims under § 251 for two reasons. First, the examiner said that in view of the decision of the Court of Appeals in *Beckman Instruments, Inc. v. Chemtronics, Inc.,* 428 F.2d 555 (5th Cir.), cert. denied, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970), "applicant is not deemed to have satisfied the statutory requirement of a lack of 'deceptive intention'." Second, the examiner said that in view of the

_____

1. Application serial No. 122,656, entitled "Electrochemical Device for Chemical Analysis," filed March 10, 1971, to reissue patent No. 2,913,386, granted Nov. 17, 1959.

statement in the reissue oath (declaration)

 \* \* \* that the purpose of this reissue application is to amend certain claims in order to make more explicit structural features already implicit in those claims

 \* \* \* \* \* \*

"reissue would not be proper."

After considering extensive arguments by appellant, the examiner, in his final rejection, repeated and adhered to both of his reasons for rejecting all claims under § 251. As to the first reason he said,

> Applicant is reminded that the Court of Appeals of the Fifth Circuit found the Clark patent to be invalid for the deliberate failure to fulfill the uncomprising [sic, uncompromising] duty of full and good faith disclosure to the Patent Office. This is considered to be sufficient ground for rejection under 35 U.S.C. 251 as not meeting the requirement of lacking deceptive intent.

As to the second reason, he reiterated that making more explicit structural features already implicit in claims "is not a proper basis for seeking reissue."

In his Examiner's Answer, responding to appellant's appeal brief, the examiner pointed out, inter alia, that this application is to reissue a patent involved in a litigation in which the Fifth Circuit Court of Appeals had held *the patent* invalid because of plaintiffs' (the plaintiffs being appellant and his exclusive licensee, by whom the application for the patent sought to be reissued had been prosecuted) "failure to fulfill the 'uncompromising duty' of full and good faith disclosure to the Patent Office." That failure resided in not disclosing to the Patent Office the Stow et al. publication, well known to plaintiffs at the time and clearly known to them to be of pivotal importance in determining the patentability of Clark's claims.[2]

As the examiner had done previously, he equated the deliberate failure to disclose the Stow et al. reference to the Patent Office with failure to comply with § 251, which requires that whatever the defect in the patent may be it shall have occurred "through error without any deceptive intention." He then concluded:

> The deliberate failure to fulfill an uncomprising [sic] duty of disclosure as found by the Court of Appeals is considered sufficient ground for rejection under 35 USC 251.

And, summarizing his previously-stated second reason for noncompliance with § 251, he said:

> The rejection under 35 USC 251 is also proper because applicant alleges in the oath \* \* \* that the sought changes merely "make more explicit structural features already implicit in those claims." If this is so, re-issue is not proper.

The board, in affirming the rejection under § 251, said (emphasis added):

2. In support of the statement that Stow et al. was a very important item of prior art, it suffices to repeat a quotation from a memorandum to Beckman's manager of engineering from its patent liason employee, Strickler, which is found in the Fifth Circuit Court of Appeals' opinion at 428 F.2d 565, also in the record before us:

> A related matter has now come up that creates a rather ticklish situation. As of early 1954, Dr. Richard W. Stow of Ohio State University Medical Center corresponded with our [Beckman's] Sales Department \* \* \* concerning a glass electrode adaptation that he was developing for $pCO_2$ measurement \* \* \*. The electrode is similar to the Clark design in that reference and measuring electrodes are both placed behind a single semi-permeable membrane. *The Stow device is clearly within the scope of claims now in the Clark application* \* \* Clark and Stow have known about each others' work \* \* \*.

> We do not at the present time know whether Clark or Stow is the prior inventor as concerns the broad claims of the Clark application.

Thereafter, Beckman amended the claims in an attempt to avoid the Stow et al. reference and prosecuted the application to issuance without disclosing Stow et al. to the examiner, who did not discover it on his own.

Deliberate *conduct,* found by the Court of Appeals to justify a finding of invalidity [of the patent] *based upon such conduct,* in our view, is sufficient to *preclude* a finding that there was *error* within the meaning of 35 U.S.C. 251, *to permit* reissue of the patent. Therefore, the Examiner's rejection under 35 U.S.C. 251 is sustainable.

The opinion of the Fifth Circuit Court of Appeals, in the suit above referred to, summarized the court's decision on validity of the patent sought to be reissued by saying, in part:

> We find the patent sued upon in this case to be invalid for two independent reasons. * * * The second is that Beckman, in securing the patent, failed to fulfill the "uncompromising duty" of disclosure of an applicant before the Patent Office, because Beckman, while possessed of information regarding Stow's invention and realizing its significance, omitted that information from its patent application.

The court followed up that statement with a full discussion of the second ground in section II B of its opinion wherein it said, inter alia, after reciting the facts with respect to the knowledge and relevance of the Stow et al. reference:

> Appellants' only reply to these facts is that they did not consider Stow's work to be relevant prior art. This assertion, however, is rendered utterly incredible both by Beckman's conduct and by the obvious similarity of the Stow and Clark devices. * * * there was no excuse for appellants' failure to disclose Stow's work to the Patent Office, and this conclusion prevents us from considering Beckman's conduct as fulfilling an "uncompromising duty" of good faith disclosure.

## OPINION

 It was appropriate that the examiner should have given initial consideration to the question of whether a proper ground for reissue existed under § 251.

That is the first order of business in examining an application for reissue. Stringham, *Patent Soliciting and Examining,* Sec. 297, pp. 577–78 (1934); McCrady, *Patent Office Practice,* Sec. 222 (4th ed. 1959); *Manual of Patent Examining Procedure* 1401.08. This entails a consideration of the grounds stated in the reissue oath or declaration on the basis of which reissue is sought. Only after that hurdle has been cleared is it necessary to consider the issues of patentability of the reissue claims over prior art, as developed on further examination of new or amended claims or reexamination of retained patent claims. See 37 CFR 1.175 and 1.176.

The instant application does not clear the first hurdle and its rejection must be affirmed on that ground. It is therefore unnecessary to consider other questions discussed in the briefs and arguments.

This opinion is sharply focused on the single question of whether appellant has presented a good case for reissue of his patent under § 251.

Claims 1, 2, 6, 7 and 8 are the only claims on which he appealed to the board and on which he appeals here. As the board found, claims 2 and 8 are the same as claims of the patent. Appellant admitted before the board that the remaining claims are "in substance" the same as claims in the patent. This is in accord with the allegation in the reissue declaration with reference to all of the claims initially contained in the reissue application (many of which were cancelled) "that the purpose of this reissue application is to amend certain claims in order to make more explicit *structural features already implicit in those claims* * *."* (Emphasis added.) Appellant's Reply Brief before the board similarly admits: "It is true that the claims on appeal are in substance claims which were in the original patent." We see no change in the subject matter delineated by these "changed" claims.

Simple logic forces the conclusion that appellant never thought he was claiming "more or less than he had a right to

claim in the patent." It could not have been for that statutory reason that reissue was applied for. The declaration of the reissue application alleges nothing "defective" in the specification or drawing. It is true that some amendments were made to the specification but not until after the final rejection of the reissue application. Consequently, they are not referred to in the declaration as curing defects or as reasons why reissue was necessary. Furthermore, the amendments are all mere deletions, the first being of a formalistic reference to the *general* field to which the invention "relates" and the remainder being the deletion of three stated "objects" of the invention. Obviously they were deleted merely because the opinion of the Court of Appeals had referred to them in its discussion of claim scope and validity in view of the prior art. These omissions from the specification, however, are no more substantive than the changes in the claims, which were not made until the reissue application had been examined and rejected.

It being apparent that in filing his application for reissue appellant asserted no defects in the specification, drawing, or claims, it may well be asked what his purpose was. Considering the substance of the reissue declaration, it clearly constitutes an argument as to the differences between what he claimed in his *patent* and the prior art, particularly Stow et al., and *a justification of his failure to call the Stow et al. reference to the attention of the Patent Office.* The declaration amounts to nothing more than an argument that the Fifth Circuit Court of Appeals erred in holding his patent claims invalid over prior art and a request that the Patent Office issue him a new patent (with specification and claims *unchanged "in substance"*) over the art *on which the court relied,* of which art the Office, by virtue of the

litigation, is now, of course, fully informed.[3] See MPEP 1401.09(a).

■ Appellant has failed to comply with § 251 because he has not cleared the condition that the patent be inoperative or invalid through some "error." Appellant has pointed to no error on his part but only to alleged error by the Fifth Circuit Court of Appeals.

In the Fifth Circuit litigation, the patent was held invalid on two grounds: (A) unpatentability over Stow et al. and (B) Clark's failure to disclose the Stow invention to the Patent Office. The latter point is controlling here, because if it does *not* fall within the concept of "error" in § 251, it negatives the right to reissue apart from all other considerations. Ground (B), furthermore, goes to the patent right as a whole, independently of particular claims.

The holding of invalidity of the Clark patent on ground (B) was not because of any defect in the patent or the unpatentability of any claim but because of inequitable or at least impermissible *conduct* on the part of the applicant, or on the part of those he entrusted with the prosecution of his application, by whose acts he is bound under elementary legal principles.

The failure to disclose Stow et al. to the examiner resulted in the Fifth Circuit deeming appellant's patent to be invalid, and it is this act, *whether the Fifth Circuit was correct or not,* which impelled appellant to seek a reissue. We cannot accept appellant's argument that the failure to disclose was an error in the sense that it arose by inadvertence, accident, or mistake. See *In re Wadlinger,* 496 F.2d 1200 (CCPA 1974). The record, which includes the evidence before the Fifth Circuit as well as the papers in the instant reissue application, shows that Beckman, appellant's agent,

---

**3.** Appellant's reply brief contains the statement: "while the Patent Office did not have the opportunity to consider the Stow et al reference in the prosecution of the original Clark patent application, *this application for reissue has given the Patent Office that opportunity * * *.*" (Emphasis added.)

was aware of Stow et al. and, as further shown by the Strickler memorandum, supra note 2, recognized its relevance as prior art. The reissue declaration, furthermore, states (emphasis added):

that [Clark] believes said original patent 2,913,386 to be wholly or partially invalid because he claimed more than he intended to claim in some of the claims of said patent, in that features set forth in such claims *which he believed to be definitive in distinguishing devices of his invention from other electrochemical devices* were held, in a decision of the United States Court of Appeals for the Fifth Circuit entitled *Beckman Instruments, Inc. et al vs. Chemtronics, Inc. et al,* 428 [482] F.2d 555, 165 USPQ 355, cert. den. [400 U.S. 956, 91 S.Ct. 353] 27 L.Ed.2d 264, not sufficiently explicit;

that he believed *the claims of said patent were definitively directed to polarographic devices,* a type of measuring device, which he believes has achieved a distinct status in the field of measuring devices,

\* \* \* \* \* \*

that he did not bring such devices to the attention of the Patent Office and this was not for the purpose of deception or deliberately concealing such devices but was based on his belief that such devices were so fundamentally different from the polarographic devices disclosed in said patent as to be, in his opinion, and in the opinions of others skilled in this art, irrelevant when compared to the prior art devices mentioned in column 1, lines 32 to 64 of said [Clark] patent;

█ While appellant may have believed that Stow et al. was not a relevant reference, the Patent and Trademark Office now has ample evidence from which to conclude that Stow et al. was *known* by Beckman to be highly relevant prior art. The duty to disclose relevant, material prior art under these circumstances, known to the applicant or his agents and not found by the examiner, is well established. The Strickler memorandum shows how relevant and material Beckman considered Stow et al. to be. If appellant considered his claims sufficiently narrow to be clear of the close Stow et al. reference, the examiner, and not he or "others skilled in this art," was the person to decide whether appellant's original claims had been amended sufficiently to be patentable over Stow et al. We do not agree that appellant could, under the state of the law in 1956 or now, amend claims *expressly* to avoid a § 102 reference unknown to the examiner and justifiably consider there was no duty to bring that reference to the examiner's attention. We see no error, accident, inadvertence, or mistake in these facts.

Reissue is not available to rescue a patentee who had presented claims limited to avoid particular prior art and then had failed to disclose that prior art (the examiner not having cited it) after that failure to disclose has resulted in the invalidating of the claims. The sole goal of appellant in soliciting a reissue is to have the examiner *re*-examine his claims in light of the reference he originally failed to disclose in order, apparently, to relieve him of the consequences of his failure.[4]

While this court has often said that § 251 is to be liberally construed as a remedial statute, *In re Oda,* 443 F.2d 1200, 58 CCPA 1353 (1971), we do not feel that such liberalism extends to eradication of a dereliction of a duty by what is, in effect, a re-prosecution in which the examiner is now given an opportunity to pass on patentability in light of a very pertinent reference which the applicant knowingly withheld from him. We cannot equate this with "error," or with "inadvertence, accident, or mistake."

---

4. This case does not require us to decide, and we do not decide, whether it is proper to seek reissue in order to disclose uncited prior art where no holding of invalidity has arisen from the patentee's failure to have disclosed the prior art.

We have given full consideration to the views of the district court on remand in *Beckman Instruments, Inc. v. Chemtronics, Inc.,* 328 F.Supp. 1132 (W.D.Tex. 1971), in which the court found appellant and its licensee Beckman had not been guilty of any *willful and deliberate misrepresentation of a material fact with an intent to deceive the examiner,* so as to incur antitrust liability under *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

*Walker Process* dealt with an allegation of fraudulent procurement of a patent and with the traditional elements of fraud. The district judge's opinion on remand in *Beckman* found them missing. Like the two opinions in *Walker Process,* he distinguished honest mistake and other bona fide actions with respect to matters which may result in patent invalidity—sometimes classified as "technical fraud," which is not fraud at all. Appellant would have us put his conduct in the latter category and on that basis accord to him the right to overcome his failure to perform his uncompromising duty through reissue, holding it was just an "error" under § 251. That we will not do. The attempt comes to late. Even though it is not fraud, an applicant or his agent cannot knowingly withhold relevant prior art from the examiner until he finds out whether such action invalidates his patent and then apply for reissue only if he loses the gamble on the ground he made an "error." When, as here, a *holding of invalidity* has been decreed by a court of appeals for a flagrant dereliction of duty to disclose, reissue is not available for expiation.

The decision of the board is *affirmed. Affirmed.*

MILLER, Judge (concurring).

I agree that the decision of the board affirming the examiner's rejection should be affirmed. However, I would affirm on the ground of collateral estoppel based on the Fifth Circuit's holding of unpatentability in *Beckman.* I disagree with the majority's affirmance of the board's decision on the ground of failure to meet the requirements of § 251.

## § 251 ISSUE

The only "hurdle" presented by § 251 is that the patent, "through error without any deceptive intention, [be] deemed wholly or partly inoperative or invalid by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent . . . ." If this "hurdle" is cleared, "the Commissioner *shall* . . . reissue the patent . . . ." (Emphasis supplied.)

Appellant's patent was deemed invalid by the Fifth Circuit by reason of his claiming more than he had a right to claim. Thus, the Fifth Circuit has established appellant's error. The § 251 issue, therefore, is whether the error was "without any deceptive intention."

The majority would ignore this error by creating two "hurdles" not required by the statute: (1) It implies that an applicant for a reissue patent must have *thought* he was claiming more or less than he had a right to claim in the patent, saying:

Simple logic forces the conclusion that appellant never thought he was claiming "more or less than he had a right to claim in the patent."

(2) Giving a narrow, technical construction to appellant's reissue declaration, without examining the claims in detail, it declares that claiming "more or less than he had a right to claim in the patent" could not have been the statutory reason for applying for reissue, because appellant "admitted before the board" that claims 1, 6, and 7 were the same "in substance" as claims in the patent.

However, an examination of claims 1 and 6 shows that they have been changed in scope. Claim 1, which originally claimed a device merely with "means for confining an electrolyte forming substance," now requires such a substance. Claim 6, which originally claimed merely a means "adapted to contain an electrolyte," now requires an

electrolyte. (Whether such changes are sufficient to avoid rejection on the ground of collateral estoppel is another question, considered *infra*.) Claim 7 does not appear to have been changed in scope.

It is clear that appellant relies on the "error" established by the Fifth Circuit as a basis for filing for reissue. His declaration states:

> that he believes said original patent . . . to be wholly or partially invalid because he claimed more than he intended to claim in some of the claims of said patent, in that features set forth in such claims which he believed to be definitive in distinguishing devices of his invention from other electrochemical devices were held, in [*Beckman*] . . ., not sufficiently explicit;

> . . . . .

> that the purpose of this reissue application is to amend certain claims in order to make more explicit structural features already implicit in those claims and which clearly bring out the fact that the polarographic devices disclosed in said patent are basically and structurally different from [the prior art] . . . .

During prosecution, appellant explained this portion of his declaration as follows:

> The purpose was to bring out more clearly those structural features needed to distinguish the claims from the Stow et al device because the claims had been construed more broadly than intended . . . . It is in this sense that the allegation is made—not in the sense urged by the Examiner that different language is now being used in the amended claims in order to claim again, in the same scope, the invention originally claimed.

Some of the claims have been amended to make them more specific and to recite additional structure. It is in this sense that the claims are being made more explicit. Reference is made here to Finding No. 4 of Judge Guinn (170 USPQ 468).

Contrary to the majority's implication that no changes in the claims were made until *after* rejection of the reissue application, some of the claims *originally* set forth in the reissue application (and cancelled by an amendment under Rule 116, 37 CFR 1.116, that also amended other claims which are on appeal) were changed from those in the patent. Thus, viewing appellant's statements and actions in full context, it is clear that he intended to limit the scope of the claims to avoid the prior art. The narrow construction given by the majority to the statement in the reissue oath that the purpose of the application was to make more explicit structural features already implicit in the patent is not in keeping with the liberal approach that should be followed in applying a remedial statute. *In re Oda*, 443 F.2d 1200, 58 CCPA 1353 (1971). This is particularly true considering the Fifth Circuit's conclusion that his patent claimed the broad concept of the dual electrode within a permeable membrane for use covering the broad field of polarography rather than particular forms of a polarographic device.

Another error relied upon by appellant and recognized by the majority is his failure to call the Stow invention to the attention of the Patent Office (PTO). This "error" or "mistake in judgment" was a ground relied on in *Beckman* for the holding of invalidity. The fact that it was *deliberate* does not preclude reissue. *In re Wadlinger*, 496 F.2d 1200 (CCPA 1974).[1] See C. Marshall Dann,

1. An additional possible error pointed to by the majority is a defective specification. I disagree with the majority's implication that the mere deletion of portions of the specification that an applicant fears may cause an overly broad construction of his claims is not a proper ground for reissue. Even if this court's opinion is that the specification was not defective and that the deletions are not substantive, another court, where the validity of the patent might be tested, could disagree. In any event, granting a reissue patent to correct what the patentee perceives to be a defect in the specification would not appear to adversely affect anyone's interest.

*Form and Substance in Patent Matters,* 57 J.Pat.Off.Soc'y 202 (1975).

After explaining *some* of the circumstances surrounding this error, the majority asserts, without citation of authority, that reissue is not available to rescue a patentee who had presented claims limited to avoid particular prior art and had failed to disclose that prior art—after such failure to disclose has resulted in invalidating the claims. But, in the absence of any contrary provision in the statute, reissue should be available to remedy any error or mistake made by applicants and their attorneys without deceptive intent. See *Fontijn v. Okamoto,* 518 F.2d 610, 622 (CCPA 1975).

The majority does not directly state that the above errors are unavailable to appellant because of "deceptive intention," but this appears to be the real basis for its decision.[2] Consideration of *all* the circumstances, however, leads to the conclusion that appellant acted in good faith. Thus, on remand from the Fifth Circuit, the district court judge, who considered all the evidence[3] and observed the demeanor of the witnesses, found not only, as the majority opinion points out, that appellant "had not been guilty of any willful and deliberate misrepresentation of a material fact with an intent to deceive the examiner," but also that appellant had "acted in good faith and simply made an 'honest *mistake* in judgment.'" (Emphasis supplied.)[4]

2. Note its assertions that the Stow invention "was *known* by Beckman to be highly relevant prior art," that the duty to disclose such art "is well established," that appellant "knowingly withheld" such art, and that this was a "flagrant dereliction of duty to disclose."

3. The record from the Fifth Circuit incorporated in this appeal is merely a printed appendix of the record filed in the appeal before that court and does not include all of the evidence presented to the district court.

4. The following Findings of Fact were entered:

4. As held by the Court of Appeals, some of the *claims* in the Clark patent are improperly drawn in that they cover the Stow arrangement simply put to a "different use" (428 F.2d at pp. 561, 564, 165 USPQ at 360, 562–563 [sic 362–63]). This does not mean, however, that the *invention* of Dr. Clark is the same as the Stow device. That they are different was readily admitted by defendants' expert Dr. Bard (R. 579, 606), and also by defendant Neville (R. 667). The basic differences in function and structure, as contrasted with the apparent similarities, were described in detail by Dr. Hume (R. 505–512). The Court of Appeals held that plaintiffs nevertheless should have called the Stow device to the attention of the patent examiner, as relevant to the broad claims of Clark. However, on the remand issue, i. e., whether plaintiffs committed an "intentional fraud", the acknowledged and significant differences between the Clark and Stow devices support plaintiffs' position that they acted in good faith and simply made an "honest mistake in judgment". [Footnote omitted.]

. . . . .

6. In holding the Clark patent invalid because of plaintiffs' failure to call to the atten-

tion of the Patent Examiner the prior carbon dioxide detection device of Dr. Stow, the Court of Appeals emphasized a memorandum from Beckman's patent liaison employee Strickler, dated December 6, 1956 (Defendants' Exh. N–48). In this memorandum Strickler stated that claims then pending in the Clark application read upon the Stow device, that he did not know which of the two developments was earlier, and that he was concerned over the situation. As the Court of Appeals held, the Strickler memorandum showed his knowledge of the Stow development, and his realization that there might be a problem if Dr. Clark obtained patent claims broad enough to cover Stow's glass electrode device. It was true, moreover, that not all of the claims pending in the Clark application at the time of the Strickler memorandum contained a polarographic limitation and, if read without resort to the patent specification, one or more of these claims covered the Stow device. With respect to the issue of plaintiffs' good faith a significant fact, however, is that all of these original claims were cancelled during the prosecution of the Clark patent application (Defendants' Exh. A) and, as held by the Court of Appeals, "under the rules of patent construction" the patent finally obtained "covers only devices for polarographic analysis" (428 F.2d at p. 562, 165 USPQ at 361). The Strickler memorandum, particularly when considered in light of the patent prosecution as a whole (Defendants' Exh. A) and the patent ultimately issued to Dr. Clark, does not suggest any intent or plan to obtain a patent which would cover the Stow device.

7. The Strickler memorandum also states that the Stow device was a "glass electrode adaptation that he was developing for $pCO_2$ measurement" and that "The Stow invention applied to $pCO_2$ measurement may indepen-

Such findings are most persuasive that appellant's errors occurred without any *deceptive* intention. See *Scott Paper Co. v. Fort Howard Paper Co.,* 432 F.2d 1198 (7th Cir.), *cert. denied,* 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812 (1970).

The majority says that an applicant cannot wait until he finds out that his actions have invalidated his patent before applying for reissue. However, before the patent was declared invalid, appellant was unaware that it was defective and, therefore, could not have cleared a hurdle that *is* in § 251. The majority gratuitously labels appellant's conduct a "flagrant dereliction of duty,"

but the Fifth Circuit in *Beckman* did not so characterize it; and the finding of the district court that appellant acted in good faith stands in sharp rebuttal.[5]

The majority quotes the examiner's reference to the Fifth Circuit's determination of invalidity of the Clark patent for failure to fulfill the uncompromising duty of full and good faith disclosure to the PTO and states that such failure "resided in not disclosing to the Patent Office the Stow et al. publication, well known to plaintiffs at the time and clearly known to them to be of pivotal importance in determining the patentability of Clark's claims." It refuses to

dently be of substantial interest and importance to Beckman" (Defendants' Exh. N–48, p. 1). These comments show Strickler's appreciation of the fact that the Stow and Clark developments, independently of each other, would each be of interest to an instrument manufacturer such as Beckman. They negate any inference that might otherwise be drawn from the memorandum that Strickler considered the Stow and Clark developments to be the same, or even necessarily interfering inventions.

8. There was testimony at the trial that Beckman never demanded a royalty under the Clark patent on any device for measuring carbon dioxide, and that Beckman has never paid Dr. Clark any royalty on Beckman's carbon dioxide measurement devices (R. 370, 398). This further shows that Beckman's interpretation of the scope of the Clark patent, as excluding the Stow and other carbon dioxide detection devices, was consistent with the holdings of the Court of Appeals and this Court that the Clark patent was limited to devices for polarographic analysis.

9. The evidence as a whole shows a good faith belief on the part of plaintiffs that instruments for polarographic analysis, such as the Clark oxygen cell, were basically different and patentably distinct from potentiometric carbon dioxide detection devices such as Stow's glass electrode. The testimony of Dr. Hume (R. 505–512) and the deposition testimony of Dr. Severinghaus (R. 341–344) shows that acknowledged experts in polarographic and potentiometric analysis considered the Stow potentiometric carbon dioxide device and the Clark polarographic oxygen cell to be independent and distinct developments. Dr. Severinghaus, after attending the meeting at which Stow first disclosed his membrane covered glass electrode for carbon dioxide detection, and discussing it with Dr. Stow, continued working in an effort to solve the independent

problem of polarographic oxygen measurement until Dr. Clark disclosed his solution (R. 325–328). The opinions and actions of scientists directly involved in these fields corroborate plaintiffs' position that they were acting in good faith in relying upon the differences between polarographic and potentiometric analysis.

10. The court finds that defendants have not made a prima facie showing of Walker Process intentional fraud because the evidence shows that plaintiffs had a good faith belief that the polarographic analysis to which the Clark patent is limited sufficiently distinguished the Stow potentiometric development and made it immaterial.

. . . . .

19. The record as a whole shows that plaintiffs acted in good faith in obtaining and seeking to enforce the Clark patent in suit.

The "significant differences between the Clark and Stow devices" are apparent. The Clark device measures current and therefore is polarographic; whereas the Stow device measures voltage and therefore is potentiometric. The Clark device utilizes a fixed voltage with electrodes of relatively low resistance to permit current flow; whereas the Stow device utilizes a glass electrode of extremely high resistance to approach an ideal current of zero. These and other significant differences led Dr. Hume, one of the expert witnesses before the District Court to compare the superficial similarities to those between a cow and a cat.

5. It should also be remembered that the district court, in the original trial, held that the Clark invention was patentable over the Stow invention. 160 USPQ 619 (W.D.Tex.1968). Since reasonable men could differ over the pertinence of the Stow invention, it is gross overstatement to characterize appellant's conduct as "flagrant."

classify appellant's conduct as honest mistake "and on that basis accord to him the right to overcome his failure to perform his uncompromising duty through reissue." Thus, the majority follows the same erroneous path taken by the examiner and, indeed, the Fifth Circuit—lifting the "uncompromising duty" standard of the Supreme Court out of context and stretching it far beyond its intended scope. *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

The cited case was an action for an infringement and breach of contract brought by Automotive against Precision and one Kenneth Larson. In 1939, what was then the Patent Office declared an interference between certain claims in Larson's pending patent application and those in one filed by one Herman Zimmerman. Automotive was the owner of Zimmerman's application. In Larson's preliminary statement before the Patent Office he gave false dates regarding conception, disclosure, drawing, description, and reduction to practice of his claimed invention—all designed to antedate those in Zimmerman's application. Larson and eight witnesses also testified in the interference proceedings in support of his claims, corroborating his statement regarding dates. With knowledge of the falsity of the statement and testimony, the parties worked out a settlement in which Larson conceded priority to Zimmerman and Larson's application (owned by a third party) was to be assigned to Automotive. The assignment took place, and automotive received patents on both the Larson and Zimmerman applications. The defense against Automotive's subsequent infringement suit was that Automotive possessed such "unclean hands" as to foreclose its right to enforce the patents and the contracts. In reversing the Seventh Circuit and holding that the district court's dismissal of the complaints "for want of equity" was correct, the Supreme Court applied the equitable maxim that "he who comes into equity must come with clean hands." It said:

The history of the patents and contracts in issue is steeped in perjury and undisclosed knowledge of perjury. Larson's application was admittedly based upon false data which destroyed whatever just claim it might otherwise have had to the status of a patent. Yet Automotive, with at least moral and actual certainty if not absolute proof of the facts concerning the perjury, chose to act in disregard of the public interest. Instead of doing all within its power to reveal and expose the fraud, it procured an outside settlement of the interference proceedings, acquired the Larson application itself, turned it into a patent and barred the other parties from ever questioning its validity. Such conduct does not conform to minimum ethical standards and does not justify Automotive's present attempt to assert and enforce these perjury-tainted patents and contracts.

· · · · ·

. . . The important fact is that Automotive had every reason to believe and did believe that Larson's application was fraudulent and his statements perjured. Yet it acted in complete disregard of that belief. Never for a moment did Automotive or its representatives doubt the existence of this fraud.

It was in this context that the Supreme Court laid down the "uncompromising duty" standard as follows:

Those who have applications pending with the Patent Office or who are parties to Patent Office proceedings have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue.

It is readily apparent that the facts in the *Precision Instrument* case and the *full statement* of the "uncompromising duty" standard are not applicable to the case before us. As the district court

found on remand, "the acknowledged and significant differences between the Clark and Stow devices support plaintiffs' position that they acted in good faith and simply made an 'honest mistake in judgment.'" In the face of this finding, the majority says "the Patent and Trademark Office now has ample evidence from which to conclude that Stow et al. was *known* by Beckman to be highly relevant prior art." It relies on the "Strickler memorandum," but acknowledges that *after* the "Strickler memorandum" *the claims were amended.* Appellant's good faith belief that the amendments avoided the Stow et al. reference is underscored by the following statement of the district court on remand:

> It was true . . . that not all of the claims pending in the Clark application at the time of the Strickler memorandum contained a polarographic limitation and, if read without resort to the patent specification, one or more of these claims covered the Stow device. With respect to the issue of plaintiffs' good faith a *significant fact,* however, is that all of these original claims were cancelled during the prosecution of the Clark patent application . . . and, as held by the Court of Appeals, "under the rules of patent construction" the patent finally obtained "covers only devices for polarographic analysis" . . . . The Strickler memorandum, particularly when considered in light of the patent prosecution as a whole . . . and the patent ultimately issued to Dr. Clark, does not suggest any intent or plan to obtain a patent which would cover the Stow device. [Emphasis supplied.]

The majority makes the broad statement: "The duty to disclose relevant, material prior art under these circumstances, known to the applicant or his agents and not found by the examiner, is well established." I respectfully point out that the duty to disclose *as it existed* during the period 1956–1959 (from the time of application to issue of the original patent) is what should be established. As one recognized authority has put it, "would the average patent solicitor prosecuting the Clark reference have felt that he had in Stow a section 102 reference which must be cited to the examiner or a section 103 reference which need not be set up as a straw man?"[6] In his opinion, Stow would not have been a section 102 reference. As far as section 103 is concerned, he points out that there is "some" authority, "all long after 1959," indicating that a section 103 reference should be called to the attention of the PTO if it is closer to the claimed invention than any of the other references on which the examiner had relied.[7] The point, of course, is that to retroactively apply a newly developed standard and, at the same time, to deny appellant the opportunity to correct the situation by reissue is manifestly unfair.

## COLLATERAL ESTOPPEL ISSUE

The examiner's second ground of rejection was the holding of the Fifth Circuit Court of Appeals that the claims were unpatentable over Stow et al., the claims in the reissue application being "not in substance different from the claims held invalid by the Court of Appeals." Although the examiner cited *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the board did not do so, saying merely that the Fifth Circuit's holding of unpatentability in *Beckman Instruments, supra,* "is necessarily controlling as to the patentability of the claims here on appeal." Because of lack of identity of parties and difference in actions before the PTO and those before the Fifth Cir-

6. Kayton, *Fraud in Patent Procurement,* 43 Geo.Wash.L.Rev. 1, 93–94 (1974).

7. Citing *Sarkes Tarzian, Inc. v. Philco Corp.,* 351 F.2d 557 (7th Cir. 1965); *Union Carbide Corp. v. Filtrol Corp.,* 170 USPQ 482 (C.D.Cal. 1971), aff'd, 179 USPQ 209 (9th Cir. 1973).

634

cuit, the board could only have been applying the rule of collateral estoppel,[8] which is what the Supreme Court did in *Blonder-Tongue,* rejecting the doctrine of mutuality of estoppel which had been followed in such cases as *Triplett v. Lowell,* 297 U.S. 638, 55 S.Ct. 645, 80 L.Ed. 949 (1936). This court has affirmed the board's application of collateral estoppel in an ex parte proceeding involving an issue previously decided in an inter partes proceeding. *In re Pritchard,* 463 F.2d 1359, 59 CCPA 1284 (1972). There the court said:

> The holding is . . . an application of more general principles of collateral estoppel wherein a judgment previously rendered bars consideration of questions of fact or mixed questions of fact and law which were, or should have been, resolved in the earlier litigation. See *Yates v. United States,* 354 U.S. 298, 335–338, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 90–91, 74 S.Ct. 414, 98 L.Ed. 532 (1954); *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597–602, 68 S.Ct. 715, 92 L.Ed. 898 (1948). An estoppel of this sort is invoked for various reasons of judicial and public policy. To prevent repetitious litigation, to avoid inconsistent holdings which lead to further litigation, to give sanctity and finality to a judgment, and to generally insure the orderly and complete resolution of disputes are among the interests involved. See generally 46 Am.Jur.2d, Judgments, §§ 394–95, 401–02.

The court emphasized that the ex parte proceeding bore "such a close relationship" to the prior inter partes (interference) proceeding that estoppel was properly applied with respect to questions that were, or should have been, answered in the priority contest. There is a similar close relationship between a reissue proceeding under 35 U.S.C. § 251 and a prior infringement proceeding where the issue of patentability decided in the infringement proceeding prompted the filing of the reissue application.

An essential element of the rule of collateral estoppel is substantial identity of the issue or issues in each action. *Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954); see *Carter-Wallace, Inc. v. United States,* 496 F.2d 535 (Ct. Cl.1974). Thus, the public interest in granting valid patents (including reissued patents) outweighs the public interest underlying collateral estoppel and res judicata where "the issue" presented is not substantially identical. *In re Russell,* 439 F.2d 1228, 58 CCPA 1081 (1971); *In re Craig,* 411 F.2d 1333, 56 CCPA 1438 (1969). It is therefore necessary to review the Fifth Circuit's opinion in *Beckman* in light of the record before it to determine whether the issue of patentability there was substantially the same as that involved in appellant's reissue application proceeding. Needless to say, appellant vigorously maintains that the issue is not substantially the same; that, indeed, the Fifth Circuit's decision on unpatentability over the prior art related only to claims 9 and 10.

The original complaint of Beckman and Clark alleged infringement of the patent generally, without specifying any claims. Defendants' "Answer and Counterclaim" alleged, among other things, invalidity of the patent generally, on the

**8.** This court has affirmed the board's application of the rule of res judicata in a case involving a continuation application where substantially identical claims of the parent application had been declared unpatentable in prior federal court litigation. *In re Katz,* 467 F.2d 939, 58 CCPA 713 (1970). In *In re Herr,* 377 F.2d 610, 54 CCPA 1315 (1967), this court reversed a res judicata rejection by the board in a continuation-in-part application proceeding notwithstanding that identical claims had been held unpatentable in the parent application by this court in *In re Herr,* 304 F.2d 906, 50 CCPA 705 (1962). However, unlike this case and *Katz,* new evidence of patentability had been presented before the board. This court appropriately concluded that "*different* issues of patentability are indeed presented by the two records."

basis of prior art, without specifying any claims. The counterclaim invoked the declaratory judgment power of the court under 28 U.S.C. § 2201, incorporated by reference the above allegation, and concluded with a prayer "that the claims of said patent be adjudged invalid." Additionally, defendants sought treble damages under 15 U.S.C. § 15 for violation of the antitrust laws, alleging that the patent had been obtained by fraud on the Patent Office.

During the trial, plaintiffs' counsel made the following statement:

I might say on that score, Your Honor, that in the pleadings we said that the Plaintiffs would rely on Claims 3, 4, 5, 9 and 10, but I think for purposes of this trial we could confine ourselves *primarily* to 9 and 10. . . . [Emphasis supplied.]

Thus, plaintiffs did not dismiss their suit with respect to claims 3–5. Even had they sought to do so, the solicitor argues persuasively that this would not "immunize those claims from defendants' noted counterclaim for patent invalidity." *Kalo Inoculant Co. v. Funk Bros. Seed Co.,* 161 F.2d 981 (7th Cir. 1947), *rev'd on other grounds,* 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588 (1948); *Schering Corp. v. Gilbert,* 153 F.2d 428 (2d Cir. 1946); *Lackner Co. v. Quehl Sign Co.,* 145 F.2d 932 (6th Cir. 1944). The trial court held that "the invention of the patent in suit" was neither anticipated for purposes of 35 U.S.C. § 102 nor obvious to one skilled in the art for purposes of 35 U.S.C. § 103. It also held that there had been no infringement. 160 USPQ 619 (W.D. Tex.1968).

Before taking up the issues on appeal, the Fifth Circuit noted the Supreme Court's emphasis on the desirability of determining patent validity in an infringement suit even though the simplest way to dispose of the case would be a finding of non-infringement. It cited *Sinclair & Carroll Co. v. Interchemical Corp.,* 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945), where the Court said:

There has been a tendency among the lower federal courts in infringement suits to dispose of them . . . without going into the question of validity of the patent. . . . It has come to be recognized, however, that of the two questions, validity has the greater public importance. . . .

The court proceeded to "find the patent sued upon . . . to be invalid for two independent reasons," namely: "anticipation" by Stow (without citing 35 U.S.C. § 102 or § 103),[9] and failure of Beckman to fulfill the "uncompromising duty" of disclosure before the Patent Office in securing the patent. Before discussing the first reason, the court said: "Our attention must focus on the claims the patent actually makes." After discussing the second reason, the court concluded: "We are constrained to hold the patent invalid on this ground, also." This would seem to state its intention that the two holdings be commensurate, and appellant concedes that the second holding covers all claims.

The court premised its holding of "anticipation" on its determination that Stow was the inventor of the "broad concept of the dual electrode within a permeable membrane" not only for use in potentiometric cells, but for use with electrochemical cells generally (which would include polarographic cells).[10]

---

**9.** It is obvious from the unquestionable differences between Stow and the claims on appeal that the Fifth Circuit used the term "anticipation" broadly to mean that the subject matter of the claims was not patentable over Stow, rather than as a term of art in patent law to mean that the basis of invalidity was 35 U.S.C. § 102. As noted by the author of the majority opinion, courts occasionally fail to understand the jargon of patent law. Rich, *Laying the*

*Ghost of the "Invention" Requirement,* 1 APLAQ 26, 40 (1972).

**10.** Stow discloses a device for measuring pH to determine the amount of $CO_2$ in blood. A semi-permeable membrane permeable to $CO_2$ separates the device and a quantity of water from the blood to be tested. After diffusion equilibrium is established, the hydrogen ion concentration of the water, which is a function

"Despite our willingness to assume that Clark created a patentable invention," it said, "we cannot hold that this patent, which merely puts the unchanged Stow electrode arrangement to a use covering the broad field of polarography, validly claims any invention at all."

The court concluded, "after having examined the claims at suit," that appellants had attempted to claim a patent "monopoly" on use of Stow's "broad concept" in the entirety of an established, generalized field of analytical chemistry, and it stated in note 17 that "[t]he claims sued upon in this case are numbers 9 and 10 of appellants' patent." However, the opinion as a whole indicates that the court was aware that validity of all claims of Beckman's patent had been put in issue by Chemtronics and that its holding on "anticipation" by Stow was not restricted to claims 9 and 10. In note 10, for example, the court said: "*Several* of the claims do not contain the word polarography or any other language that would limit them to that field." (Emphasis supplied.) This could only refer to claims other than claims 9 and 10, which contained such language.[11] At one point, in referring to the claims, the court used the phrase "[e]very one of them," which would be an awkward way to describe only two claims. And in the following sentence, it said: "The claims do not describe any particular materials or processes; they claim the broad concept, including the use of *all* materials or

processes that *might* be applicable to polarography." 428 F.2d at 562. Thus, the court pointed to the deficiency in "every one" of the claims that caused them to be unpatentable over Stow.[12]

In view of the foregoing, I am satisfied that the Fifth Circuit held *all* patent claims unpatentable over Stow. It should be pointed out, however, that, for purposes of collateral estoppel, absolute identity of the claims, as opposed to "the issue," is not required. See *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.*, 498 F.2d 1115 (6th Cir. 1974).

Next it must be determined whether appellant's specification and/or claims in his reissue application have been changed sufficiently to avoid substantial identity of the issue relating to unpatentability over Stow. In other words, the question is whether the changes present an issue that was not adjudicated by the Fifth Circuit.

The specification has been amended to limit the description to polarographic cells. However, in *Beckman* the Fifth Circuit said "we assume, as appellants have urged that we should, that the patent covers only devices for polarographic analysis."

With respect to the claims in the reissue application, claims 2 and 8 are identical to the patent claims.[13] In claim 1, amendment of the phrase "to determine the quantity of a certain substance" by

---

of the $CO_2$ concentration, is measured. Rather than measuring current as in appellant's invention, the Stow device measures a potential difference. Appellant's invention is a polarographic cell in which an electrolyte provides ions that react with a substance to be measured, such as the oxygen in a blood sample, to alter the electrical current flowing through the cell by causing reduction of oxygen at the cathode. To prevent fouling of the electrodes and contamination of the electrolyte, a membrane separating the cell from the sample is provided which is permeable to the substance to be measured but impermeable to all other substances that would alter the current.

11. "Several" is defined as: "an indefinite number more than two and fewer than many

. . . ." *Webster's Third New International Dictionary* (unabr. 1971).

12. In note 8 the court observed: "The claims of Clark's patent are not, however, limited to any set of materials that produce any specific synergistic result except the result obtained by the arrangement that Stow developed. They cannot be read to be further limited. It is this fact, and not want of invention, that invalidates the patent."

13. The original patent appears as an appendix to the opinion of the court of appeals at 428 F.2d 568–77.

inserting "directly" after "determine" was apparently prompted by the statement in the district court's opinion on remand that "adding the word 'directly' would have made the statement more precise in its exclusion of the Stow device. . . ." *Beckman Instruments, Inc. v. Chemtronics, Inc.,* 328 F.Supp. 1132, 1137 (W.D.Tex.1971). However, "direct" determination is inherent in a polarographic device.[14] Adding a requirement of an "electrolyte forming substance" does, as pointed out above, change the scope of claim 1, but since the requirement of an "electrolyte" was already present in original claim 2, it does not present an issue that was not adjudicated by the Fifth Circuit. Changing "electrical characteristics" to "electrical current characteristics" does not add anything of substance since the latter is implicit from the earlier recital in the claim of "electrical current carrying contact with said anode and said cathode"; also the word "current" appeared in several of the original claims.

Claims 6 and 7 have been amended to add the word "direct," which, as just noted, is inherent in a polarographic device. Adding a requirement of an "electrolyte" does, as pointed out above, change the scope of claim 6. However, since this requirement was also present in original claim 2, it does not present an issue not adjudicated by the Fifth Circuit. Other amendments to claims 6 and 7 express insubstantial limitations inherent in the subject matter of the claims.

Accordingly, I conclude that the changes in appellant's specification and claims in his reissue application are insufficient to avoid substantial identity with the issue adjudicated by the Fifth Circuit.

In view of the foregoing, I would hold that the board correctly applied the rule of collateral estoppel in affirming the examiner's rejection of the claims.

14. Patent claim 10 recited "said sensing electrode effecting a signal current through said electrolyte and said reference electrode by re-moval of said constituent [oxygen] from said electrolyte space. . . ."