**ARGUS CHEMICAL CORPORATION, Appellee,**

v.

**FIBRE GLASS–EVERCOAT COMPANY, INC., Appellant.**

**Appeal No. 84–1418.**

United States Court of Appeals, Federal Circuit.

April 4, 1985.

---

Mario A. Martella, Beehler, Pavitt, Siegemund, Jagger & Martella, Los Angeles, Cal., argued, for appellant.

George M. Schwab, Townsend & Townsend, San Francisco, Cal., argued, for appellee.

Before DAVIS, KASHIWA and NIES, Circuit Judges.

NIES, Circuit Judge.

This appeal involves a patent infringement suit tried in a bench trial before the district court of the Central District of California. Because we hold that the patents in suit, U.S. Patent Nos. 3,181,991 and 3,182,026, were procured by inequitable conduct, we reverse the judgment of the district court holding appellant liable for infringement.

I.

Argus Chemical Corporation is the owner of U.S. Patent No. 3,181,991 (the "Pigmentation Patent") and U.S. Patent No. 3,182,026 for homogeneous pigmented peroxide compositions (the "Homogeneous Patent"). The respective filing dates, the significance of which will become apparent, are August

7, 1961 and March 14, 1962. Both patents relate to a type of pigmented peroxide composition. The products are useful as a catalyst or "hardener" for polyester resin used as autobody putty.

In a suit filed in 1978, Argus charged Fibre Glass-Evercoat Company with infringement of claims 2–5 of the '991 Pigmentation Patent and claims 3–5 of the '026 Homogeneous Patent, all of which include water as an ingredient.[1] The claims of the Pigmentation Patent as originally written read equally well on both "dry" and "wet" compositions of the product. Upon confirming that sales had been made of dry pigmented benzoyl peroxide compositions prior to August 7, 1960, so as to constitute an "on sale" time bar under 35 U.S.C. § 102(b), the attorney handling the application amended the claims, before initial examination, to avoid reading directly on any of the dry products sold, and, thereafter, all claims to dry compositions were dropped. The examiner was never informed of the sales of any dry composition.

Additional sales prior to the March 14, 1961, critical date were not disclosed in connection with the Homogeneous Patent.[2] Those sales involved pigmented benzoyl peroxide compositions which contained a stabilizing agent to avoid separation.

During the course of these proceedings, Fibre Glass sought to establish invalidity under § 102(b) on the basis of the prior sales or under § 103 on the basis of obviousness, *inter alia*, in view of the sold compositions. *See In re Foster*, 343 F.2d 980, 52 CCPA 1808, 145 USPQ 166 (1965), *cert. denied*, 383 U.S. 966, 86 S.Ct. 1270, 16 L.Ed.2d 307 (1966). In addition, Fibre Glass charged Argus with "fraud" (inequitable conduct)[3] in failing to disclose such sales to the PTO.

Prior to trial Argus returned to the PTO, under the now-defunct, no-fault reissue proceedings, for consideration of the sales and other additional prior art not previously considered by the PTO. It appears that the PTO continued to find the claims patentable under §§ 102 and 103 despite the sales and additional reference.[4]

Upon return to the district court, the court ultimately determined that lack · of novelty and obviousness were not established by Fibre Glass, and that there was no breach of an applicant's duty of candor during examination under the standard of the early '60's by Argus's failure to disclose the subject sales.

## II.

### Discussion

In this appeal we lay to rest any further argument that in the past the standard for

1. The charges of infringement of another patent and other claims were dropped. The parties stipulated that validity and infringement stand or fail on the basis of claim 2 of '991 and claim 3 of '026, other claims being dependent. These claims read as follows:
   '991: Claim 2. A stable catalyst composition comprising an organic peroxide, a wholly compatible non-white color pigment selected from the group consisting of red iron oxide, black iron oxide, yellow iron oxide, chrome orange, phthalocyanine and ferric ferrocyanide with which the active oxygen content of said organic peroxide remains substantially constant in an amount just sufficient to impart a preselected amount of coloration to the composition, and a fluid diluent including a minor amount of water inert with respect to said organic peroxide and pigment.
   '026: Claim 3. A non-separating pigmented peroxide composition in approximate parts by weight, 50% benzoyl peroxide, 15% water, 25% plasticizer, and 10% detergent; and a

pigment with which the active oxygen content of said peroxide remains substantially constant in an amount to impart a pre-selected amount of coloration to said composition.

2. We find it unnecessary to discuss Fibre Glass' further charge of inequitable conduct by Argus's failure to disclose U.S. Patent No. 2,910,443, issued to Bader.

3. In *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.,* 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed. Cir.1984), this court adopted the terminology "inequitable conduct" to identify a breach of the duty of candor to the PTO in order to make it clear that such malfeasance is to be distinguished from common law "fraud."

4. The PTO action is not clear. The final action states that "sale of the claimed composition prior to the critical date has not been proven with a preponderance of evidence."

disclosure of known prior art only required that a reference which fully anticipated the claimed invention, thereby destroying novelty under 35 U.S.C. § 102, had to be disclosed to the PTO under an applicant's duty of candor.

In this case, Argus presented the following findings of fact, which the district court adopted:

32. Also, in the early 1960's, applicant's duty of disclosure to the Patent Office examiner was much different than it is today. *At the time, it was generally accepted in the profession that the applicant need only disclose prior art which it knew to be an anticipation or near anticipation of the invention claimed—prior art that may be pertinent to a consideration of obviousness but which the applicant in good faith did not believe to be anticipating or near anticipating, was not disclosed to the Patent Office.*

33. Because the prior sales were not the same as that claimed, i.e., were not considered to be an "anticipation" or near-anticipation, and were not considered pertinent to a consideration of "obviousness", they were not disclosed to the Patent Office. This lack of disclosure might not satisfy today's standards but was in accordance with accepted standards at the time of the events in question. [Emphasis added.]

Argus cites to us no precedent for this standard of acceptable conduct, but instead relies on an expert witness, an experienced patent attorney, who testified:

A. As far as disclosure was concerned, search was not always made, but when it was made and if a reference amounted to an anticipation, a full disclosure—here it is sort of referenced—or came so close to that that the claims would have only minor alterations, then we had a choice and we did either one of two things, disclose it or abandon the application.

Q. Thank you. Now, if the reference was not considered to be in anticipation or near anticipation, was a disclosure generally made?

A. No, it was not, except laying out background in the specification.

▮ The question of the appropriate standard for determining inequitable conduct in procuring a patent is one of law. Thus, the testimony of an attorney on the practice which some attorneys followed is irrelevant. Moreover, even if, in some circuits, the standard were as stated by the witness, it was not the law in all circuits or in the Court of Customs and Patent Appeals or in the U.S. Court of Claims. We reject the view that one's duty to the PTO should be judged by the least common denominator.

The precedent of *In re Clark*, 522 F.2d 623, 187 USPQ 209 (CCPA 1975) is uniquely on point with respect to both the nature of the offense here and the time when it occurred. As stated therein:

While appellant may have believed that Stow et al. was not a relevant reference, the Patent and Trademark Office now has ample evidence from which to conclude that Stow et al. was *known* by Beckman to be highly relevant prior art. The duty to disclose relevant, material prior art under these circumstances, known to the applicant or his agents and not found by the examiner, is well established. The Strickler memorandum shows how relevant and material Beckman considered Stow et al. to be. If appellant considered his claims sufficiently narrow to be clear of the close Stow et al. reference, the examiner, and not he or "others skilled in this art," was the person to decide whether appellant's original claims had been amended sufficiently to be patentable over Stow et al. We do not agree that appellant could, under the state of the law in 1956 or now, amend claims *expressly* to avoid a § 102 reference unknown to the examiner and justifiably consider there was no duty to bring that reference to the examiner's attention.

*Id.* at 627, 187 USPQ at 212–213. *Accord, Driscoll v. Cebalo*, 731 F.2d 878, 884–85, 221 USPQ 745, 750 (Fed.Cir.1984) (current

PTO regulations consistent with prior case law in federal courts).[5]

■ Argus seeks to avoid a decision that inequitable conduct occurred in prosecution because the withheld information does not meet the high standard of materiality which the parties agreed was set forth in *Norton v. Curtiss*, 433 F.2d 779, 794, 57 CCPA 1384, 167 USPQ 532, 544 (1970):

> In patent cases, "materiality" has generally been interpreted to mean that if the Patent Office had been aware of the complete or true facts, the challenged claims would not have been allowed.

Undoubtedly the statement appears in *Norton v. Curtiss*. We cannot see how acknowledging that it does binds Fibre Glass to that standard.

This court has rejected any single test for "materiality" in determining inequitable conduct. Most recently, the court stated in *J.P. Stevens*, 747 F.2d at 1559, 223 USPQ at 1092:

> "Inequitable conduct" requires proof by clear and convincing evidence of a threshold degree of materiality of the nondisclosed or false information. It has been indicated that the threshold can be established by any of four tests: (1) objective "but for"; (2) subjective "but for"; (3) "but it may have been"; and (4) PTO Rule 1.56(a), i.e., whether there is a substantial likelihood that a reasonable examiner would have considered the omitted reference or false information important in deciding whether to allow the application to issue as a patent. *American Hoist [& Derrick Co. v. Sowa & Sons]*, 725 F.2d [1350] at 1362, 220 USPQ [763] at 772–73 [ (Fed.Cir.1984) ]. The PTO standard is the appropriate starting point because it is the broadest and because it most closely aligns with

how one ought to conduct business with the PTO. *American Hoist*, 725 F.2d at 1363, 220 USPQ at 773.

■ Argus does not assert that the information was not material under the PTO standard. Moreover, we need look no further than the testimony of Argus's expert witness to hold that materiality is established. As that witness stated:

> [A]ssuming what was sold did indeed contain compatible pigments then that would be *pertinent* for consideration. [Emphasis added.]

Argus also attempts to avoid a holding of inequitable conduct by reason of the subjective "good faith" of its attorney, a defense applicable in common law fraud cases. It is Argus's position that the precedent of this court is in error by failing to recognize that "fraud" is an *intentional* tort and that the "good faith" of the party charged with fraud is always a complete defense. Thus, per Argus, the subjective "good faith" of its attorney in his understanding of the law negates the charge of fraud.

■ Contrary to Argus's view, conduct before the PTO which may render a patent unenforceable is broader than the common law tort of fraud. *J.P. Stevens*, 747 F.2d at 1559, 223 USPQ at 1092. With respect to intent, in the *J.P. Stevens* case the court stated specifically:

> [T]hreshold intent is established where an actor in an applicant's position would have reasonably known that the reference was material, *e.g.*, that the reference would have been important to a reasonable examiner in deciding whether to allow the claims.

*Id.* at 1564, 223 USPQ at 1096.

■ Counsel's subjective "good faith" does not, therefore, negate inequitable con-

---

5. It bears repeating that some decisions in which the term "anticipation" appears must be read with the understanding that "anticipation" in the case law prior to the Patent Act of 1952 may not have been used in the sense it is today. As also stated in *In re Clark*, 522 F.2d at 635, 187 USPQ at 219 n. 9:

> It is obvious from the unquestionable differences between Stow and the claims on appeal that the Fifth Circuit used the term "anticipa-

tion" broadly to mean that the subject matter of the claims was not patentable over Stow, rather than as a term of art in patent law to mean that the basis of invalidity was 35 U.S.C. § 102. As noted by the author of the majority opinion, courts occasionally fail to understand the jargon of patent law. Rich, *Laying the Ghost of the "Invention" Requirement,* 1 APLAQ 26, 40 (1972).

duct. Rather, the question, as in *J.P. Stevens,* is whether a reasonable person in the position of Argus's counsel knew or should have known that the information was material. On this issue Argus's counsel argues, in effect, that one in his position would not have considered the sales information material to the PTO because until *In re Palmquist,* 319 F.2d 547, 51 CCPA 839, 138 USPQ 234 (CCPA 1963), was overruled by *In re Foster, supra,* it was generally understood that an inventor's own sales could not be used against him in determining obviousness under § 103. It is difficult to see how *Palmquist,* a decision rendered after the inequitable conduct in this case, could justify Argus's action. In any event, nothing in *Palmquist* relates to the question of an applicant's nondisclosure of a statutory time bar under § 102(b) against claims in a pending application, which could be avoided only by deletion or amendment of claims.

■ Because the withheld information on sales was clearly material, and Argus's attorney should have known of its importance to the PTO's consideration, inequitable conduct under the precedent of this court has been established. The district court erred, as a matter of law, in applying the standard proposed by Argus to the undisputed facts of this case.

In view of our disposition of this case on the ground that the patents are unenforceable due to inequitable conduct, we do not need to address the other substantive issues of validity or infringement.

The case is *remanded* for further proceedings in accordance herewith.

REVERSED AND REMANDED.