**ARGUS CHEMICAL CORPORATION, a Delaware corporation, Plaintiff,**

v.

**FIBRE GLASS–EVERCOAT COMPANY, INC., Defendant.**

No. CV 78–2620–JWC.

United States District Court, C.D. California.

May 22, 1986.

**16**

George M. Schwab and Albert J. Hillman, Townsend and Townsend, San Francisco, Cal., for plaintiff.

Mario A. Martella, Beehler, Pavitt, Siegemund, Jagger, Martella & Dawes, Los Angeles, Cal., for defendant.

## MEMORANDUM AND ORDER

CURTIS, District Judge.

This patent infringement suit has been remanded to this court for further proceedings after a reversal by the Federal Circuit Court of Appeals. This court now has before it motions by the defendant for summary judgment on the antitrust counterclaim and for attorney's fees and costs.

### BACKGROUND

In July 1978, plaintiff Argus filed suit against the defendant Fibre Glass for infringement of patents which involved peroxygen catalyst compositions, i.e., automotive body putty hardeners. Both plaintiff and defendant were in the business of providing materials for autobody and marine repair work. Plaintiff sought damages and an injunction preventing defendant from selling the patented substances in the marketplace.

Defendant Fibre Glass responded to plaintiff's complaint by contending that the patents were invalid and by asserting an antitrust counterclaim. Defendant contended that the patents were invalid because the subject materials were sold and used in the United States more than one year before the filing of the patent applications, and in addition, the plaintiff knew of this prior conduct and failed to disclose the information to the patent office. Defendant's antitrust counterclaim was grounded on the contention that plaintiff utilized the invalid patents and corresponding enforcement litigation in an attempt to monopolize the relevant market, thus causing the defendant a serious antitrust injury.

This court held that the plaintiff's patents had not been fraudulently obtained, that they were valid, and that they had indeed been infringed upon by the defendant, thus allowing plaintiff to recover. This court concluded that the relevant prior sales were of such a nature that their disclosure to the patent office was not required by patent statutes as construed by the courts at the time of the original applications.

As to the antitrust claim asserted in defendant's counterclaim, this court held that "no basis has been found for defendant's antitrust counterclaim...."

On appeal, the circuit court reversed this court's decision, holding that the patents were "unenforceable due to inequitable conduct" before the patent and trademark office (hereinafter referred to as "PTO"). *Argus Chem. Corp. v. Fibre Glass-Evercoat Co., Inc.*, 759 F.2d 10, 15 (Fed.Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985). The appellate court found inequitable conduct by determining that the information on sales was clearly material and that Argus' attorney should have known that it was important to the PTO's consideration. *Id.*

The appellate court made no reference to the antitrust counterclaim in its decision. *See id.*

### MOTION FOR SUMMARY JUDGMENT ON THE ANTITRUST COUNTERCLAIM

In its summary judgment motion, the defendant contends that since the appellate court has held the patents to be invalid as having been obtained by "unethical" conduct, and since the plaintiff has demonstrated its intention to use the invalid patents as a means of establishing a monopoly, there are no unresolved questions of fact and the defendant is entitled to judgment on its counterclaim as a matter of law.

On the other hand, the plaintiff contends that the court effectively dismissed the counterclaim by finding that "no basis has been found for defendant's antitrust counterclaim," especially since no reference was made to the counterclaim by the appellate court. However, this finding was based upon the assumption that the patents were valid.

The issue here, since this case has been remanded to this court without limitation, is whether the evidence in the record supports the claim for an antitrust violation.

Defendant proceeds on two theories of liability. The first theory is that plaintiff attempted to enforce a patent that was procured by fraud. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 174, 86 S.Ct. 347, 348, 15 L.Ed.2d 247 (1965). To recover on this theory, the defendant would have to show that the patent was indeed obtained by fraud. *See id.* The second theory is that the plaintiff prosecuted an infringement action in bad faith, i.e. "with knowledge that the patents, lawfully-obtained, were invalid." *See Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, 992–98 (9th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980) (this case is known as *Handgards I*). To recover under this theory, the defendant must prove (1) by clear and convincing evidence that the patent suit was pursued in bad faith; (2) that plaintiff had a specific intent to monopolize the relevant market; and (3) that a dangerous probability of success existed. *See*

*Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1288 (9th Cir.1984) (this case is known as *Handgards II*).

It is obvious from an examination of the elements of either theory that the requisite state of mind is crucial to recovery. Both causes of action speak in terms of fraud, bad faith, and/or specific intent. These issues are issues of fact, as to which the court has not made a finding.

Upon reviewing the evidence in this case, the court finds that the plaintiff pursued the patent process and the infringement litigation in the good faith belief that its claims were legitimate, that the failure to disclose the prior sales to the PTO was done in reliance upon what was then conceived to be the proper interpretation of the patent laws, and that there was no fraud involved in the patent process.

These findings are not inconsistent with the opinion of the appellate court, for although the court held the patents to be unenforceable, the ground therefore was specified to be "inequitable conduct before the patent and trademark office." *Argus,* 759 F.2d at 15. The court points out clearly that a holding of inequitable conduct is by no means equivalent to a holding of fraud or bad faith. *Id.* at 14–15. In answer to Argus' contention that its attorneys had acted in good faith and without fraud, the appellate panel replied: "Contrary to Argus' view, conduct before the PTO which may render a patent unenforceable is broader than the common law tort of fraud...." Counsel's subjective "good faith" does not, therefore, negate inequitable conduct." *Id.*

I hold therefore that the counterclaim for antitrust violations is without merit and is therefore dismissed.

### MOTION FOR ATTORNEYS' FEES

Defendant has moved for attorneys's fees and costs under 35 U.S.C. § 285 (1982) and Fed.R.Civ.P. 54(d) respectively. Defendant contends that this was an exceptional case and therefore an award of attorneys' fees and costs is appropriate. For

such an award to be justified, there must be proof of actual wrongful intent or gross negligence. Mere error is not enough to satisfy section 285. *See Machinery Corp. of Am. v. Gullfiber AB,* 774 F.2d 467, 473–74 (Fed.Cir.1985); *Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1540–41 (Fed. Cir.1984).

In view of my findings that the plaintiff pursued this litigation in the good faith belief that it had lawfully complied with all the rules of the patent office, and that its failure to make required disclosures to the patent office was the result of reliance upon an interpretation of the patent statutes believed at that time to be correct, I do not find this to be an exceptional case within the meaning of section 285.

IT IS THEREFORE ORDERED that defendant's motion for attorneys' fees is denied, and that defendant be awarded its costs.

It appearing that this case is ready for final judgment, defendant's attorneys shall prepare an appropriate proposed judgment.