ARGUS CHEMICAL
CORPORATION, Appellee,

v.

FIBRE GLASS–EVERCOAT
COMPANY, INC.,
Appellant.

Appeal No. 86–1449.

United States Court of Appeals,
Federal Circuit.

Feb. 26, 1987.

Mario A. Martella, Beehler, Pavitt, Siegemund, Jagger, Martella & Dawes, Los Angeles, Cal., argued for appellant. With him on the brief was Maurice B. Pilosof, Los Angeles, Cal.

George M. Schwab and Albert J. Hillman, Townsend and Townsend, San Francisco, Cal., argued for appellee.

Before FRIEDMAN, DAVIS and NIES, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the Central District of California, dismissing an antitrust counterclaim to a suit for patent infringement and denying attorney's fees. 645 F.Supp. 15, 230 USPQ 717 (1986). We affirm.

I

A. The appellee, Argus Chemical Corporation (Argus), in 1978 filed suit in the United States District Court for the Central District of California, charging the appellant, Fibre Glass-Evercoat Company, Inc.

(Fibre Glass), with infringing two of its patents on homogeneous pigmented peroxide compositions. The two patents are known as the Pigmentation and the Homogeneous Patents. The compositions are used as a "hardener" for automobile body putty.

Claims of the patents involved in this case were limited to "wet" compositions of the product. As this court explained in the prior appeal in this case:

> The claims of the Pigmentation Patent as originally written read equally well on both "dry" and "wet" compositions of the product. Upon confirming that sales had been made of dry pigmented benzoyl peroxide compositions prior to August 7, 1960, so as to constitute an "on sale" time bar under 35 U.S.C. § 102(b), the attorney handling the application amended the claims before initial examination, to avoid reading directly on any of the dry products sold, and, thereafter, all claims to dry compositions were dropped. The examiner was never informed of the sales of any dry composition.
>
> Additional sales prior to the March 14, 1961, critical date were not disclosed in connection with the Homogeneous Patent.

759 F.2d 10, 12, 225 USPQ 1100, 1101, *cert. denied,* — U.S. ——, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985).

In defense, Fibre Glass challenged the validity of the patent and denied infringement. Fibre Glass also filed a counterclaim alleging that Argus had attempted to monopolize peroxide- and pigment-containing hardeners (paragraph 20) by, among other acts, seeking to enforce patents "known by plaintiff to be invalid" (paragraph 14), in violation of the antitrust laws.

After a bench trial, the district court held (1) that Fibre Glass had not shown that the patents were invalid, and (2) that Fibre Glass had infringed the patents. The court held that "there was no breach of an applicant's duty of candor during examination under the standard of the early '60's by Argus's failure to disclose the subject sales." 759 F.2d at 12, 225 USPQ at 1102.

Although the court made detailed findings of fact and conclusions of law on the patent issues, its sole discussion of the antitrust counterclaim was contained in finding 45, which stated:

> No basis has been found for defendant's antitrust counterclaim resulting from acts after December 17, 1968 [the date on which the parties entered into mutual general releases (fdg. 44)], nor, for that matter, before that date.

B. On appeal, this court held that the patents were unenforceable because of Argus' inequitable conduct before the Patent Office in failing to disclose the sales of the composition that had been made more than one year before the filing of the patent application. The court rejected Argus' "good faith" defense:

> Argus also attempts to avoid a holding of inequitable conduct by reason of the subjective "good faith" of its attorney, a defense applicable in common law fraud cases. It is Argus's position that the precedent of this court is in error by failing to recognize that "fraud" is an *intentional* tort and that the "good faith" of the party charged is always a complete defense....
>
> Contrary to Argus's view, conduct before the PTO which may render a patent unenforceable is broader than the common law tort of fraud....
>
> Counsel's subjective "good faith" does not ... negate inequitable conduct. Rather, the question ... is whether a reasonable person in the position of Argus's counsel knew or should have known that the information was material....
>
> Because the withheld information on sales was clearly material, and Argus's attorney should have known of its importance to the PTO's consideration, inequitable conduct under the precedent of this court has been established.

759 F.2d at 14–15, 225 USPQ at 1103–04.

The court stated that, because of its holding that "the patents are unenforceable due to inequitable conduct, we do not need to address the other substantive issues of validity or infringement." 759 F.2d

at 15, 225 USPQ at 1104. The court did not refer to the antitrust counterclaim. It remanded the case for further proceedings in accordance with that opinion.

C. Following the remand, Argus moved for summary judgment on its antitrust counterclaim and for costs and attorney fees. The district court dismissed the counterclaim as "without merit." It stated that Argus' antitrust claims

> speak in terms of fraud, bad faith, and/or specific intent. These issues are issues of fact, as to which this court has not made a finding.

> Upon reviewing the evidence in this case, the court finds that the plaintiff pursued the patent process and the infringement litigation in the good faith belief that its claims were legitimate, that the failure to disclose the prior sales to the PTO was done in reliance upon what was then conceived to be the proper interpretation of the patent laws, and that there was no fraud involved in the patent process.

> These findings are not inconsistent with the opinion of the appellate court, for although the court held the patents to be unenforceable, the ground therefore was specified to be "inequitable conduct before the patent and trademark office." The court points out clearly that a holding of inequitable conduct is by no means equivalent to a holding of fraud or bad faith.

645 F.Supp. at 17, 230 USPQ at 719 (citations omitted).

The court also denied attorney fees. It stated that for a case to be "exceptional" under 35 U.S.C. § 285 (1982)—the basis for awarding attorney fees—"there must be proof of actual wrongful intent or gross negligence." The court concluded:

> In view of my findings that the plaintiff pursued this litigation in good faith belief that it had lawfully complied with all the rules of the patent office, and that its failure to make required disclosures to the patent office was the result of reliance upon an interpretation of the patent statutes believed at that time to be correct, I do not find this to be an

exceptional case within the meaning of section 285.

645 F.Supp. at 18, 230 USPQ at 719.

## II

Both parties contend that in the prior appeal we decided the antitrust issue. Fibre Glass argues that we tacitly overturned the district court's initial rejection of the antitrust counterclaim in finding 45; Argus contends that we tacitly approved it.

Our prior opinion did not ever refer to the antitrust counterclaim, much less indicate any views about or tacitly decide it. There was no basis or justification for either counsel to make the argument.

## III

A. The theory of Fibre Glass' antitrust claim is that announced by the Supreme Court in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, 147 USPQ 404 (1965). *Walker Process,* like the present case, was a patent infringement suit in which the accused infringer filed an antitrust counterclaim. The Court described the antitrust claim as

> charg[ing] that Food Machinery had "illegally monopolized interstate and foreign commerce by fraudulently and in bad faith obtaining and maintaining ... its patent ... well knowing that it had no basis for ... a patent." It alleged fraud on the basis that Food Machinery had sworn before the Patent Office that it neither knew nor believed that its invention had been in public use in the United States for more than one year prior to filing its patent application when, in fact, Food Machinery was a party to prior use within such time.

382 U.S. at 174, 86 S.Ct. at 348, 147 USPQ at 405–06.

The district court dismissed the antitrust counterclaim, and the court of appeals affirmed. The Supreme Court reversed.

The Court stated that the question was "whether the maintenance and enforcement of a patent obtained by fraud on the Patent Office may be the basis of an action

under § 2 of the Sherman Act." 382 U.S. at 172, 86 S.Ct. at 348, 147 USPQ at 145. Accepting as true "the allegations of the counterclaim, as to the fraud practiced upon the Government by Food Machinery," 382 U.S. at 174, 86 S.Ct. at 348, 147 USPQ at 406, the Court "concluded that the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Id.*

In so holding, the Court stated that one element of the counterclaim "is the fraudulent procurement of a patent," 382 U.S. at 176, 86 S.Ct. at 349, 147 USPQ at 406, that the "gist" of the counterclaim was that the patentee "obtained its patent by fraud," *id.,* that the Court was "deal[ing] only with a special class of patents, *i.e.,* those procured by intentional fraud," *id.,* and that the counterclaim alleged that the patentee "obtained the patent by knowingly and willfully misrepresenting the facts to the Patent Office." 382 U.S. at 177, 86 S.Ct. at 350, 147 USPQ at 407.

The *Walker Process* opinion makes it crystal clear that the reason the counterclaim there stated a valid antitrust claim was because it alleged that the patent had been procured by "intentional fraud," *i.e.,* knowingly and willfully misrepresenting facts to the Patent Office. The decision was based upon the allegation in the counterclaim, which the Court accepted as "true," that the patentee "had sworn before the Patent Office that it neither knew nor believed that its invention had been in public use in the United States for more than one year prior to filing its patent application when, in fact, [it] was a party to prior use within such time." 382 U.S. at 174–75, 86 S.Ct. at 348–49, 147 USPQ at 406.

In the present case, however, our prior opinion held the patents unenforceable not because they had been procured by fraud but because of Argus'. "inequitable conduct" in obtaining them. We there stated that "conduct before the PTO which may render a patent unenforceable is broader than the common law tort of fraud." 759 F.2d at 14, 225 USPQ at 1103.

■ B. Fibre Glass contends that since we use the inequitable conduct rather than the fraud standard in determining whether the patentee's actions before the Patent and Trademark Office render a patent unenforceable, the inequitable conduct standard also should be applied in determining whether misconduct before the Patent and Trademark Office provides the basis for a charge of actual or attempted monopolization. We decline Fibre Glass' request to create such a significant extension of the *Walker Process* doctrine.

In deciding whether we should thus extend *Walker Process,* we look to the law of the regional circuit in which this case was brought—here the Ninth Circuit. *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 875, 228 USPQ 90, 99 (Fed.Cir.1985); *see also American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1368, 220 USPQ 763, 775–77 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41, 224 USPQ 520 (1984).

In *Cataphote Corp. v. DeSoto Chemical Coatings, Inc.,* 450 F.2d 769, 171 USPQ 736 (9th Cir.1971), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341, 174 USPQ 193 (1972), the Ninth Circuit upheld the district court's dismissal of a *Walker Process* antitrust counterclaim in which the district court had found that the patentee "had not knowingly and willfully defrauded the Patent Office." 450 F.2d at 772, 171 USPQ at 739. The court stated:

> The patent fraud proscribed by *Walker* is extremely circumscribed.... Wholly inadvertent errors or honest mistakes which are caused by neither fraudulent intent or design, nor by the patentee's gross negligence, do not constitute fraud under *Walker.* The road to the Patent Office is so tortuous and patent litigation is usually so complex, that "knowing and willful fraud" as the term is used in *Walker,* can mean no less than clear, convincing proof of intentional fraud involving affirmative dishonesty, "a deliberately planned and carefully executed

scheme to defraud ... the Patent Office."

450 F.2d at 772, 171 USPQ at 738 (citations omitted; quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245, 64 S.Ct. 997, 1000, 88 L.Ed.2d 1250, 61 USPQ 241, 245 (1944)).

The Ninth Circuit repeated that view in *SSP Agricultural Equipment, Inc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 202 USPQ 1 (1979), where it stated that under *Walker Process*

> knowing and willful patent fraud is required to establish a violation of § 2 of the Sherman Act based on the use of an invalid patent to monopolize or attempt to monopolize a segment of the market. Assuming the existence of the other necessary elements of a cause of action under § 2, there is no evidence of intentional fraud on the Patent Office in this case.

592 F.2d at 1103–04, 202 USPQ at 7 (citations omitted).

There is no reason to believe that the Ninth Circuit would depart from that standard and sanction a *Walker Process* claim based upon inequitable conduct. Indeed, in *American Hoist & Derrick*, this court, apparently applying Ninth Circuit law, stated that in a *Walker Process* claim of attempting to monopolize "a specific intent, greater than an intent evidenced by gross negligence or recklessness, is an indispensable element." 725 F.2d at 1368, 220 USPQ at 777.

■ In the present case, as noted, the district court found that the patentee

> pursued the patent process and the infringement litigation in the good faith belief that its claims were legitimate, that the failure to disclose the prior sales to the PTO was done in reliance upon what was then conceived to be the proper interpretation of the patent laws, and that there was no fraud involved in the patent process.

These findings are not clearly erroneous. There is accordingly lacking in this case the essential element of a *Walker Process* claim that the patent must have been procured by "intentional fraud" on the Patent Office.

## IV

Fibre Glass also seeks to ground its antitrust claim on the alternative theory that Argus monopolized and attempted to monopolize commerce by bringing the present infringement suit in bad faith. This theory, suggested many years ago in *Kellogg Co. v. National Biscuit Co.*, 71 F.2d 662, 666 (2d Cir.1934), was recognized in *Walker Process*. 382 U.S. at 177 n. 5, 86 S.Ct. at 350 n. 5, 147 USPQ at 407 n. 5 ("This conclusion [that fraudulent procurement of a patent may ground antitrust violation] applies with equal force to an assignee who maintains and enforces the patent with knowledge of the patent's infirmity"). The Ninth Circuit upheld an antitrust violation based on this theory in *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 202 USPQ 342 (1979) (*Handgards I*), cert. denied, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659, 204 USPQ 880 (1980), and 743 F.2d 1282 (1984) (*Handgards II*), cert. denied, 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985).

In *Handgards I*, the court held that the prosecution of patent infringement suits "in bad faith, that is, with knowledge that the patents, though lawfully-obtained, were invalid," 601 F.2d at 994, 202 USPQ at 349, could constitute an attempt to monopolize, in violation of section 2 of the Sherman Act. The court reversed the jury verdict in the plaintiff's favor, however, because the district court had failed to instruct the jury that "a patentee's infringement suit is presumptively in good faith and that this presumption can be rebutted only by clear and convincing evidence." 601 F.2d at 996, 202 USPQ at 351. The court of appeals remanded the case for a new trial.

In the second trial, the jury again found for the plaintiff, and the court of appeals affirmed. The court stated that the defendant's "antitrust liability is premised upon its prosecution of a patent infringement suit with the knowledge that its patent was invalid. *Handgards I*, 601 F.2d at 994." 743 F.2d at 1289. It described the "bad faith involved" as "attempting to en-

force a government granted monopoly to which the patent holder knows he has no right." *Id.* Noting that the defendant presented evidence that the patentee "actually knew" that the patent was invalid "on one or more of three separate grounds," 743 F.2d at 1288, the court concluded that substantial evidence supported a jury finding that the patentee "prosecuted its patent suit in bad faith." 743 F.2d at 1293.

■ The *Handgards* decisions explicitly state that to prevail in an antitrust claim based upon enforcement of an invalid or unenforceable patent, the litigant must establish that the patentee acted in bad faith in enforcing the patent because he knew that the patent was invalid. Fibre Glass has not made that showing.

To support its contention that Argus brought this suit in bad faith, Fibre Glass argues:

> Bad faith is demonstrated by the fact three patents are touched by fraud; that prior to bringing this action, Argus was advised on two separate occasions by two different parties that the patents in suit were invalid for the same factual reasons here proven.

The claim that three patents are "touched by fraud" cannot overcome the district court's finding that the patents were not fraudulently obtained. The only evidence Fibre Glass cites to support its assertion that Argus was "advised" that the patents were invalid is a letter, apparently from another competitor of Argus, responding to Argus' allegations of infringement with the assertion that the patents were invalid because of Argus' prior sales of the patented product. The allegation by an accused infringer that the patent is invalid—an assertion frequently made by those charged with infringement—cannot be turned into evidence that the patentee knew the patent was invalid when it instituted an infringement suit.

## V

Fibre Glass also challenges the district court's refusal to award it attorney fees for the defense of the infringement suit, because the district court found that this was not an exceptional case under 35 U.S.C. § 285.

As noted, the district court's refusal to find that this was an exceptional case rested on its findings that Argus

> pursued this litigation in good faith belief that it had lawfully complied with all the rules of the patent office, and that its failure to make required disclosures to the patent office was the result of reliance upon an interpretation of the patent statutes believed at that time to be correct.

■ We cannot say that these findings are clearly erroneous, or that the district court abused its discretion in concluding not to award attorney fees because this was not an exceptional case.

## CONCLUSION

The order of the district court dismissing the counterclaim and denying the motion for attorney fees is affirmed.

AFFIRMED.

NIES, Circuit Judge, additional views.

I join the panel in affirming the district court judgment for the reasons so well stated by Judge Friedman. As the author of the opinion in the previous appeal, I would add that the previous appeal was under 28 U.S.C. § 1292(c)(2). Assuming that that provision would permit us to exercise jurisdiction over an interlocutory judgment on an antitrust counterclaim upon proper appeal of the patent issues, the record in that appeal disclosed no final disposition of the antitrust counterclaim. Thus, Argus' cursory argument on the antitrust issue in the previous appeal was simply disregarded.

In retrospect, the trial court would have been spared the parties' "law of the case" arguments had we explained our silence on the antitrust issue in the earlier opinion. The trial court, fortunately, was not misled by our silence and correctly understood that we had not ruled on the antitrust claim.

On the merits it may be helpful to add my view that, in sum, our cases reflect three standards for judging the misconduct by a patentee dependent upon the extent of relief which the opposing litigant seeks: (1) misconduct which makes a patent unenforceable (which we have termed "inequitable conduct"); (2) misconduct which is sufficient to make a case "exceptional" under 35 U.S.C. 285 so as to warrant, in the discretion of the trial judge, an award of attorney fees, and (3) misconduct which rises to the level of common law fraud and which will support an antitrust claim. As a litigant moves from a purely defensive position, to a recoupment request, to an affirmative claim for damages, it is reasonable to impose more stringent requirements.