ALLEN ARCHERY, INC.,
Appellee/Cross-Appellant,

v.

BROWNING MANUFACTURING CO.,
Browning and Bingham Projects,
Inc., Appellants/Cross-Appellees,

and

Elmont L. Bingham, Joyce M.
Bingham, Appellants.

Appeal Nos. 86–1168, 86–1230
and 86–1237.

United States Court of Appeals,
Federal Circuit.

April 23, 1987.

Thomas J. Rossa and David V. Trask, Trask, Britt & Rossa, Salt Lake City, Utah, argued, for appellants/cross-appellees.

Harlan P. Huebner, Los Angeles, Cal., argued, for appellee/cross-appellant. With him on the brief, were D.A.N. Chase, Linde Thomson Fairchild Langworthy Kohn & Van Dyke, P.C., Overland Park, Kan., and Robert R. Mallinckrodt, Mallinckrodt & Mallinckrodt, Salt Lake City, Utah.

Before FRIEDMAN and DAVIS, Circuit Judges, and BENNETT, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

These are cross-appeals from two judgments of the United States District Court for the District of Utah. The first judgment rejected the contention that the patentee had engaged in inequitable conduct before the Patent and Trademark Office. 226 U.S.P.Q. 315 (1985). The second judgment held that the patent was valid and infringed, rejected claims of patent misuse and antitrust violations, declined to increase the damages or award attorney fees, and held that there had been a breach of a valid patent license agreement. (The second opinion of the district court has not been published.) We affirm both judgments.

**I**

A.  This case involves claims 7, 8, 10, and 14 of U.S. Patent No. 3,486,495 for a bow, issued to H.W. Allen and owned by Allen Archery, Inc.  The bow as depicted in the Allen patent is shown below:

The district court described the invention the Allen patent covers as follows:

> The Allen Patent relates to an archery bow known in the archery industry and to archers as a "compound bow."  The bow comprises a handle section and a pair of limbs secured to the handle section, a pair of eccentric pulley members being respectively mounted on the ends of the limbs.  A bowstring is trained around the pulley members to present a central stretch and a pair of end stretches (three line lacing).  The central stretch includes a nocking point for receiving the slotted tail or nock of an arrow.  The pulley members may be either oval shaped or round, but in either case they are mounted off center....

In operating the bow ..., the archer pulls the central stretch away from the handle at the nocking point. This causes the pulley members to rotate, and as the archer continues to draw the bowstring, the force required to draw the bowstring increases and reaches a maximum or peak value at an intermediate position of the nocking point between the rest position and the drawn position. As the archer then continues to pull the bowstring to the drawn position, the force decreases and the holding force at the drawn position is much less than the maximum force at the intermediate position.

Findings 11 and 12, Findings of Fact and Conclusions of Law, dated November 12, 1985.

The court found that, relative to prior art bows, the Allen bow "casts or throws an arrow at much greater speed with increased striking power for hunting and further reduces the holding force at full draw, improves the sighting and steadies the archer's aim." Finding 25. The court characterized the Allen bow as "a pioneer invention which performs a function not performed by any earlier invention. It is a significant step in the progress of the art of bows as distinguished from a mere improvement." Finding 57.

The Allen patent issued in December 1969. It contained 14 claims.

B. Allen Archery filed complaints against the appellants/cross-appellees Browning, Browning Manufacturing, Bingham Projects, Elmont L. Bingham, and Joyce M. Bingham (referred to individually and collectively as Browning), in November 1977. Allen Archery filed two suits that charge patent infringement and, in the suit against Browning Manufacturing Company, breach of a patent licensing agreement. Browning countered with a suit seeking a declaratory judgment that the Allen patent was invalid and unenforceable and that Browning had not infringed it. The district court consolidated the three cases.

Prior to filing those complaints in the Utah District Court, Allen Archery in February 1976 had filed a suit in the United States District Court for the Central District of California charging Jennings Compound Bow, *et alia*, with infringing the Allen patent. With the agreement of the parties, the district court in the present case stayed proceedings until the *Jennings* case was decided.

In June 1974, prior to the initiation of the above suits, Allen Archery filed with the United States Patent and Trademark Office a voluntary disclaimer of claims 1, 2, and 11 of the Allen patent. After trial, the district court in the *Jennings* case held that claims 3 through 6, and 12 and 13 of the Allen patent were invalid as anticipated by, and obvious in view of, certain other patents. The court further held, however, that claims 7, 8, 10, and 14 of the Allen patent were valid and infringed. *Allen Archery, Inc. v. Jennings Compound Bow, Inc.,* 211 U.S.P.Q. 206, 215 (C.D.Cal. 1981). The Court of Appeals for the Ninth Circuit affirmed. 686 F.2d 780, 216 U.S. P.Q. 585 (9th Cir.1982). Claim 9 apparently was not involved in *Jennings,* and it is not at issue here.

In June 1983, Allen Archery disclaimed the six claims that the California court had held invalid in *Jennings.*

C. The present case then proceeded to trial before the Utah district court. The court bifurcated the case. It first tried the issue whether the Allen patent was unenforceable because the patentee and his lawyer had engaged in inequitable conduct before the Patent and Trademark Office by failing during the prosecution of the patent application to disclose certain prior art references. The court held that the patentee and his counsel had not engaged in inequitable conduct and dismissed Browning's defense upon that contention. 226 U.S. P.Q. 315.

The court then tried the remaining issues in the case. In an opinion accompanied by detailed findings of fact and brief conclusions of law, the court held that: (1) claims 7, 8, 10, and 14 of the Allen patent were valid and enforceable; (2) Browning had infringed those claims; (3) the case was not exceptional and Browning's infringement was not willful, so Allen Archery was not

entitled to increased damages or attorney fees; (4) Allen Archery had not misused the patent nor violated the antitrust laws as Browning alleged; and (5) Allen Archery and Browning Manufacturing Company had entered into an enforceable patent licensing agreement for nine months in 1977, Browning Manufacturing had breached that agreement, and Allen Archery was entitled to recover the royalties specified in that agreement.

## II  VALIDITY

### A.  *Collateral Estoppel—the Jennings Case.*

■ Allen Archery points out that claims 7, 8, 10, and 14 were upheld in the *Jennings* case and urges that "absent additional material evidence of invalidity not considered in *Jennings* or a showing that the *Jennings* litigation was in some way defective or incomplete, the prior adjudication of validity of claims 7, 8, 10, and 14 should be determinative of the validity issues here." It relies upon *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 U.S.P.Q. 513 (1971), which

> held that where a patent has been declared invalid in a proceeding in which the "patentee has had a full and fair chance to litigate the validity of his patent" (402 U.S. at 333, 91 S.Ct. at 1445, 169 USPQ at 521), the patentee is collaterally estopped from relitigating the validity of the patent.

*Mississippi Chem. Corp. v. Swift Agricultural Chems. Corp.,* 717 F.2d 1374, 1376, 219 U.S.P.Q. 577, 579 (Fed.Cir.1983). According to Allen Archery, the *Blonder-Tongue* doctrine should estop Browning from attacking the validity of claims 7, 8, 10, and 14 of the Allen patent.

The *Blonder-Tongue* rule, however, "is of necessity a one-way street," 4 D. Chisum, *Patents* § 19.02[2][e], at 19–31 (1986), and does not bar someone charged with infringement from challenging the validity of patent claims that were upheld in a prior infringement suit to which it was not a party:

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

*Blonder-Tongue,* 402 U.S. at 329, 91 S.Ct. at 1443, 169 U.S.P.Q. at 520; *see also Stevenson v. Sears Roebuck & Co.,* 713 F.2d 705, 710, 218 U.S.P.Q. 969, 974 (Fed.Cir. 1983).

"Alternatively, Allen urges that this court should at least give the prior adjudication in *Jennings* great weight and affirm the district court's findings and conclusions as consistent with the *Jennings* decision." The statutory presumption of patent validity (35 U.S.C. § 282 (1982)), however, "is not augmented by an earlier adjudication of patent 'validity.'" *Shelcore, Inc. v. Durham Indus., Inc.,* 745 F.2d 621, 627, 223 U.S.P.Q. 584, 588 (Fed.Cir.1984). Accordingly, we shall review the district court's conclusion on validity in this case independently of that reached in *Jennings.*

### B.  *Anticipation.*

■ Browning contends that the Allen bow was anticipated by three United States Patents, No. 2,957,469 issued to Wilkerson, No. 2,957,470 issued to Barna, and No. 2,100,317 issued to Hickman. The district court found that claims 7, 8, 10, and 14, were not anticipated by Wilkerson, Barna, or Hickman. Anticipation is a factual determination, reviewed under the "clearly erroneous" standard. *See, e.g., Atlas Powder Co. v. E.I. du Pont de Nemours & Co.,* 750 F.2d 1569, 1573, 224 U.S.P.Q. 409, 411 (Fed.Cir.1985).

■ The district court found that both Barna and Hickman disclose bows in which the limbs "curve forwardly away from the archer," and in both "the bowstring is simply attached to the limb tips." Findings 44–46. Thus, neither Barna nor Hickman anticipates claims 7, 8, 10, or 14, since those claims "call for a pair of variable

leverage components rotatably mounted on respective limb tips...." Findings 46 and 47. Browning's statement that there is "unrebutted evidence of record show[ing] that each and every element of Claims 7 and 14 is present in both Barna and Hickman" is insufficient to show that those findings are clearly erroneous. The Wilkerson bow has pulleys mounted on its limb tips, but the district court found that they "are concentrically mounted and do not provide variable leverage as they rotate as set forth in claims 7, 8, 10, and 14 of the Allen Patent." Finding 49. This finding also is not clearly erroneous.

### C. *Obviousness.*

Obviousness under 35 U.S.C. § 103 (1982 & Supp. III 1985) is a legal issue, the determination of which involves factual inquiries into (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) any objective evidence of non-obviousness, such as long-felt need, commercial success, failure of others, copying, and unexpected results. *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545, 148 U.S.P.Q. 459, 467 (1966); *see, e.g., Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 961, 220 U.S.P.Q. 592, 600 (Fed. Cir.1983), *cert. denied,* 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69, 225 U.S.P.Q. 232 (1984). The factual findings of the district court underlying the obviousness conclusion cannot be overturned on appeal unless they are clearly erroneous. *Dennison Mfg. Co. v. Panduit Corp.,* 475 U.S. 809, 106 S.Ct. 1578, 89 L.Ed.2d 817, 229 U.S.P.Q. 478 (1986), *on remand,* 810 F.2d 1561, 1 U.S.P.Q. 1593 (Fed.Cir.1987).

■ In this case the district court made findings on all of the relevant factual criteria relating to obviousness. The court described at length the prior art on which Browning relied, explained the differences between that prior art and claims 7, 8, 10, and 14, and found that people of ordinary skill in the archery art at the time when Allen made his invention "were skilled in limb design, in the use of fiberglass as a limb material, and in the art of 'tillering' the limbs of a recurve bow so that they would flex in unison and cast the arrow along the intended line of flight. When the compound bow was first introduced, the mechanics and use of the bow were unknown to archers and bowyers of that time" (finding 56). The court also found that "[t]he compound bow, as defined by claims 7, 8, 10 and 14 of the Allen Patent, is a commercial success" (finding 58), that it "fulfilled a long-felt need in the field of archery" (finding 59), that there had been "widespread acceptance of the invention by the archery industry" (Conclusion of Law 6), and that Browning "cop[ied] the invention and prais[ed] the advantages in its catalogs" (Conclusion of Law 7). The findings of the district court are not clearly erroneous.

The district court also did not err in its legal conclusion, based upon those findings, that Browning had failed to show by clear and convincing evidence that claims 7, 8, 10, and 14 would have been obvious to one of ordinary skill in the art.

### D. *Definiteness.*

■ Browning contends that the specification does not adequately describe the invention and how to practice it, as 35 U.S.C. § 112 (1982) requires, and that those deficiencies make the claims indefinite. The district court had no problem in understanding and interpreting the claims in light of the specification, and neither do we. The language of the claims, read in light of the specification, is not indefinite or ambiguous. *See Radio Steel & Mfg. Co. v. MTD Prod., Inc.,* 731 F.2d 840, 848, 221 U.S.P.Q. 657, 663 (Fed.Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984). Browning's reference to testimony by witnesses who "expressed difficulty in comprehending the claim language at issue" is not enough to sustain Browning's contention.

### III  ENFORCEABILITY

Browning contends that the Allen patent is unenforceable for three reasons: (A) Allen engaged in inequitable conduct before

the Patent and Trademark Office; (B) Allen Archery improperly failed to disclaim certain claims of the Allen patent before that Office; and (C) Allen Archery had misused the patent.

### A. *Inequitable Conduct.*

The claim of inequitable conduct relates to two incidents.

### 1. *The Barna Patent.*

During the prosecution of the Allen patent application, the examiner rejected several claims as anticipated by the earlier Barna patent. The specification of the Barna patent stated that less pulling force was required in the subsequent than in the initial stage of the draw of the Barna bow. The district court found that, "in order to overcome the rejection ..., Allen modified an existing recurve bow to construct a bow which he believed was like the Barna bow ..., tested it, executed an affidavit under the Patent Office Rule 132, and the same was submitted by counsel with an amendment and response." 226 U.S.P.Q. at 317. The test results reported in the affidavit were that the Barna bow did not provide the diminished pulling force the specification asserted. The district court found that, "[a]fter considering the affidavit and amendment," the examiner removed the rejection of most of the claims and allowed the patent to issue. 226 U.S.P.Q. at 318.

Four years later, Allen learned that a company Allen Archery was suing for infringement had constructed a bow according to the Barna patent that provided diminished pulling force. Allen changed the bow he had previously modified to test the Barna bow, and concluded that the result of his earlier test had been erroneous. After consultation with his patent counsel, Chase, Allen filed in the Patent and Trademark Office a disclaimer of claims 1, 2, and 11 of his patent, which he concluded were too broad in view of the latest Barna bow tests.

Browning contends that Allen knew or should have known that the first test he made to determine the pulling characteristics of the Barna bow was flawed because

the modification he made in his bow to duplicate the Barna bow did not adequately duplicate that bow or reflect its true characteristics; that the Rule 132 affidavit he filed with the Patent and Trademark Office therefore was misleading; and that the filing of such a misleading affidavit constituted inequitable conduct which makes the Allen patent unenforceable.

█ After a trial on this issue, the district court found that "[t]here is no clear and convincing evidence that the actions of Holless W. Allen were other than an honest effort to duplicate the Barna-type bow, test the same and test his own bow and execute the affidavit of Finding 26 in complete good faith, even though the extent of the testing was limited" or that "the amendment and response of Finding 26 by Mr. Allen's patent counsel, D.A.N. Chase, amounted to fraud on the Patent and Trademark Office." 226 U.S.P.Q. at 318. The court further found that "[t]he failure to file the test results or reasons for the disclaimer do not reflect a lack of candor by Mr. Allen or Mr. Chase during the prosecution of the Allen patent."

Those findings are not clearly erroneous and they support the district court's conclusion that the actions of Allen and Chase relating to the Barna patent "were in good faith and did not show lack of candor" (*id.*), and that Allen and Chase therefore had not engaged in inequitable conduct.

### 2. *The Wilkerson Patent.*

During the prosecution of the Allen patent, Chase became aware of the Wilkerson '469 patent covering a bow. When Chase informed Allen of the Wilkerson invention, Allen responded that Wilkerson "uses pulleys, but the end stretches are in the same plane as the limb, so there is no mechanical advantage created, and none is claimed." Chase subsequently changed the claims he was drafting to reflect more accurately Allen's invention and thus, as he advised Allen, to "distinguish over Wilkerson."

Chase did not disclose Wilkerson to the Patent and Trademark Office during the

prosecution of the Allen patent. In *Jennings,* claims 12 and 13 of the Allen patent were held anticipated and obvious in light of Wilkerson; Allen subsequently disclaimed those claims in the Patent and Trademark Office.

The district court held that the failure of Allen and Chase to disclose Wilkerson to the Patent and Trademark Office did not constitute inequitable conduct that would make the patent unenforceable.

The court found that "[c]orrespondence between Mr. Allen and Mr. Chase with respect to Wilkerson '469 during prosecution of the Allen patent application shows an openness and frankness of expression that belies a suggestion of deceit or gross negligence on the part of Mr. Allen or Mr. Chase in not calling Wilkerson to the attention of the Patent and Trademark Office"; that Allen's "expressed position during prosecution of the patent in suit that the compound bow and the bow of the Wilkerson patent '469 are radically different, and that Wilkerson was not pertinent to the bow as claimed in claims 12 and 13 in the patent in suit, is not unreasonable"; that "[t]he testimony of Mr. Chase in the present action establishes that in his view the Wilkerson patent '469 was not and is not considered by him to anticipate or render obvious the Allen invention of claims 12 and 13"; and that "[t]he fact that the Wilkerson patent '469 was not called to the attention of the Patent and Trademark Office by Mr. Allen and Mr. Chase did not amount to gross negligence or willful misconduct. Both acted in complete good faith." 226 U.S.P.Q. at 319.

The court ruled that for purposes of determining the inequitable conduct issues, it would not treat Wilkerson as "anticipat[ing] claims 12 and 13 of the Allen Patent as there are significant differences between Wilkerson and Allen." *Id.* The court pointed out that during prosecution of the Wilkerson patent and in response to the examiner's position, the language in the specification that the Wilkerson bow "multiplied" the archer's pull was changed to state that it "lengthens" the pull. The court found that "[t]he Wilkerson pat-

ent '469 is not material to the bow of the Allen Patent, which does without question achieve force multiplication and provide a mechanical advantage for the archer." *Id.*

To sustain the defense of inequitable conduct, Browning must prove two things by clear and convincing evidence: (1) that Allen misrepresented or failed to disclose material information to the Patent and Trademark Office in the prosecution of the patent, and (2) that such misrepresentation was intentional. *See, e.g., N.V. Akzo, Aramide Maatschappij v. E.I. du Pont de Nemours & Co.,* 810 F.2d 1148, 1153, 1 U.S.P.Q.2d 1704, 1708 (Fed.Cir.1987); *J.P. Stevens & Co. v. Lex Tex, Ltd.,* 747 F.2d 1553, 1559-60, 223 U.S.P.Q. 1089, 1092 (Fed.Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985); *Orthopedic Equip. Co. v. All Orthopedic Appliances,* 707 F.2d 1376, 1383, 217 U.S.P.Q. 1281, 1286 (Fed.Cir.1983). The district court found that the Wilkerson patent was not material and that Allen's failure to disclose it to the Patent and Trademark Office was not "gross negligence or willful misconduct." Since we uphold the district court's findings that the nondisclosure was not intentional, it is not necessary to consider the finding of non-materiality, which reflects the district court's refusal to give binding effect to the determination in the *Jennings* case that Wilkerson anticipated claims 12 and 13 of the Allen patent.

The district court's finding that Allen's failure to disclose Wilkerson to the Patent and Trademark Office was not willful or intentional rested upon the supporting findings that Allen and Chase acted in the good faith belief that the Wilkerson and Allen bows were "radically different." Those findings are not clearly erroneous and they support the district court's conclusion that Browning had not proved by clear and convincing evidence that Allen and Chase's failure to call Wilkerson to the attention of the Patent Office constituted inequitable conduct.

Browning contends, however, that *Argus Chemical Corp. v. Fibre Glass-Evercoat Co.,* 759 F.2d 10, 225 U.S.P.Q. 1100 (Fed. Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct.

231, 88 L.Ed.2d 230 (1985), requires reversal of the district court's inequitable conduct determination. In *Argus,* this court reversed a district court determination that the patent had not been procured by inequitable conduct. The inequitable conduct in *Argus* was the failure to disclose to the Patent and Trademark Office the patentee's own sales of the patented product made more than one year prior to the filing of the patent application—a use which, under 35 U.S.C. § 102(b) (1982), would have barred issuance of the patent.

The district court in *Argus* had held that there was no inequitable conduct because under the standard existing in the 1960's when Argus applied for the patent, there was no duty to disclose that information to the Patent and Trademark Office. This court reversed, holding that "[t]he district court erred, as a matter of law, in applying [that] standard ... to the undisputed facts of this case," and that "inequitable conduct under the precedent of this court has been established." 759 F.2d at 15, 225 U.S.P.Q. at 1104. In so holding, the court stated that the "subjective 'good faith' " of Argus's attorney in believing that disclosure was not required "does not ... negate inequitable conduct," since the question "is whether a reasonable person in the position of Argus's counsel knew or should have known that the information was material." 759 F.2d at 14–15, 225 U.S.P.Q. at 1103.

*Argus* does not require reversal of the district court's holding of no inequitable conduct in this case. The determination whether failure to disclose information to the Patent and Trademark Office constituted inequitable conduct necessarily turns upon the facts of the particular case. The facts in this case are sufficiently different from those in *Argus* to warrant a different result.

■ The court in *Argus* found the requisite intent to establish inequitable conduct because Argus's attorney "should have known of [the] importance [of the withheld information] to the PTO's consideration." 759 F.2d at 15, 225 U.S.P.Q. at 1103–04. In this case, in contrast, the district court found that Allen and his lawyer in good faith believed that the Wilkerson patent was not material, and on this record we cannot conclude that despite that finding Allen and his lawyer "should have known" that the Wilkerson patent was important to the Patent and Trademark Office. To the extent that Browning is arguing that *Argus* "held that subjective 'good faith' is never a defense to a claim of inequitable conduct," we rejected that contention in *Laitram Corp. v. Cambridge Wire Cloth Co.,* 785 F.2d 292, 294, 228 U.S.P.Q. 935, 936 (Fed.Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 85, 93 L.Ed.2d 39 (1986).

### B. *Failure to Disclaim.*

■ Browning contends that under *Maytag Co. v. Hurley Machine Co.,* 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264 (1939), Allen Archery's failure to disclaim claims 3 to 6, 12, and 13 at the same time it disclaimed claims 1, 2, and 11, made all the claims of the Allen patent unenforceable. The *Jennings* case in the Ninth Circuit rejected this contention on the ground that the *Maytag* rule did not survive the "repeal" in the 1952 Patent Act of the provisions of the earlier Patent Act upon which *Maytag* rested. 686 F.2d at 783, 216 U.S.P.Q. at 587. The district court in the present case agreed with *Jennings,* and so do we.

In *Maytag,* the patentee had disclaimed claim 38 after a court of appeals had held it invalid. The Supreme Court held that because claim 39 was not "definitely distinguishable" from claim 38, 307 U.S. at 245, 59 S.Ct. at 859, "the patent is void for failure to disclaim claim 39", *id.* at 244, 59 S.Ct. at 858, "along with 38", *id.* at 246, 59 S.Ct. at 859. The decision rested upon the Court's interpretation of sections 65 and 71 of title 35 (35 U.S.C. (1934 ed.)) (R.S. 4917, 4922), as they then read.

Section 65, titled "Disclaimer," provided that if, "without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, ... and any such patentee ... may ... make disclaimer of such parts of the thing patented as he shall not choose

to claim." Section 71 authorized a patentee whose claim was too broad under section 65 to sue for infringement of any portion of the patent "which was bona fide his own, if it is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right...." Section 71 continued:

> But in every such case in which a judgment or decree shall be rendered for the plaintiff no costs shall be recovered unless the proper disclaimer has been entered at the Patent Office before the commencement of the suit. But no patentee shall be entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer.

In the 1952 revision of the patent statute, sections 65 and 71 were replaced by new sections 253 and 288, respectively:

> § 253. *Disclaimer.*
>
> Whenever, without any deceptive intention, a claim of a patent is invalid, the remaining claims shall not thereby be rendered invalid. A patentee ... may ... make disclaimer of any complete claim....
>
> ....
>
> § 288. *Action for infringement of a patent containing an invalid claim.*
>
> Whenever, without deceptive intention, a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent Office before the commencement of the suit.

Those changes eliminated the provision in section 71 that a patentee could sue for infringement of claims definitely distinguishable from the invalid claims unless "he has unreasonably neglected or delayed to enter a disclaimer." Under the new statute, disclaimer was required only before filing suit, and the sanction for failing thus to disclaim was not invalidity of the patent but merely the denial of costs.

Although in making these changes Congress did not specifically state that it intended to abrogate *Maytag*, that was the necessary effect of what Congress did. *Maytag* was expressly based on the statutory language that Congress deleted in 1952. Nevertheless, Browning argues that the "without deceptive intent" language in section 253 of the present law should be construed as continuing the patentee's duty to disclaim. This argument fails, however, because the legislative history shows that Congress intended to eliminate the prior provision that failure to disclaim additional invalid claims made the remaining valid claims unenforceable.

Thus, the "revision notes" that accompanied sections 253 and 288 read in relevant part:

*Section 253—Section Revised*

Based on title 35, U.S.C., 1946 ed., § 65 (R.S. 4917).

Language is changed and substantive changes are introduced; (1) only a claim as a whole may be disclaimed, and (2) the provision regarding delay is omitted. See preliminary general description of bill.

See section 288.

....

*Section 288—Section Revised*

Based on title 35, U.S.C., 1946 ed., § 71 (R.S. 4922).

The necessity for a disclaimer to recover on valid claims is eliminated. See section 253.

Language is changed.

S.Rep. No. 1979, 82d Cong., 2d Sess., *reprinted in* 1952 U.S.Code Cong. & Admin. News 2394, 2420–23. The Senate Report on the bill stated:

> Section 253 relates to another form of correction of a patent known as the disclaimer. The patentee files a paper in the Office which is recorded. He disclaims certain things from the scope of his patent or disclaims certain claims. This subject of disclaimers, in the present law, has resulted in a great deal of confusion and uncertainty in certain situations in the law which at times are almost ridiculous. Consequently, the bill

in two sections, 253 and 288, has introduced certain changes relating to disclaimers. One of these changes is that only a whole claim can be disclaimed; a patent cannot be rewritten by filing a paper in the Patent Office.

The second change relates to the situation when a patent has two or more claims and one of them may be discovered to be invalid. There is now a provision in the statute under which an invalid claim must be disclaimed without unreasonable delay in order to save the rest of the patent. What delay is unreasonable is presently quite confusing, and the present law does not, as a matter of fact, prevent the patentee from suing again on the invalid claim if he so wishes.

The bill has eliminated that requirement. It has left the situation so that if one claim of a patent is invalid, the patentee may take it out. He may sue on the remaining claims which have whatever validity they may have on their own merits. That is, one bad claim does not affect the other claims, unless they are also bad for similar reasons.

. . . .

Section 288 is the companion section to the disclaimer section, 253.

S.Rep. No. 1979, 82d Cong., 2d Sess., *reprinted in* 1952 U.S.Code Cong. & Admin. News 2394, 2401–03; *see also* Federico, *Commentary on the New Patent Act*, 35 U.S.C.A. 1, 47–48 (West 1954).

As the Ninth Circuit pointed out in *Jennings,* the "without deceptive intent" language in section 253 of the present law therefore cannot properly be construed as continuing the patentee's duty to disclaim under the earlier provisions that the Supreme Court applied in *Maytag.* The Ninth Circuit there stated:

[V]iewed in the context of the legislative history described above, the statute appears not to require any duty to disclaim an invalid claim as a condition for patent enforcement of a valid claim. It is significant that the two former sections also contained language remarkably similar to the "deceptive intent" language, independent of the duty to disclaim provi-

sions. In the former statutes, then, "deceptive intent" did not refer to intent in failing to disclaim. There is no reason to suppose that the 1952 express deletion of the duty to disclaim was intended to place a new construction on the remaining "deceptive intent" language. We are thus led to the conclusion that under present law a disclaimer is never a prerequisite for enforcement of valid patent claims.

686 F.2d at 783, 216 U.S.P.Q. at 588 (footnote omitted).

We therefore agree with and adopt the Ninth Circuit's conclusions in *Jennings* that "[t]he failure of a patentee to disclaim an invalid patent claim does not prevent the patentee from enforcing any remaining claims in the same patent which are otherwise valid." *Id.*

### C. *Patent Misuse.*

■ Certain agreements licensing the Allen patent required the licensee to pay royalties on "each and every replacement part sold by licensee for the reconstruction of said bows." Browning contends that Allen Archery misused its patent because it collected royalties on parts that were used not to reconstruct but to repair Allen bows and thereby exceeded the proper scope of its patent rights; and that such misuse made the patent unenforceable.

The district court rejected this contention. It found that the acceptance of royalties

was, as to repair parts, the result of mistake and an inability to differentiate between repair and reconstruction parts in the context of compound bows and not the result of an intent to extend the patent monopoly to unpatented articles. It is this court's opinion, as it was that of the *Jennings* court, that collection and acceptance of royalties on repair parts by Mr. Allen or Allen does not constitute misuse of the Allen Patent.

Finding 83.

There is no allegation that Allen intended to collect royalty payments for replacement parts, and the language of the licenses is to the contrary. *Cf. Mercoid Corp. v. Minne-*

*apolis-Honeywell Regulator Co.*, 320 U.S. 680, 684, 64 S.Ct. 278, 280, 88 L.Ed. 396 (1944). Browning has not shown that Allen Archery misused its patent. In so holding, we intimate no view on whether a license that covered repair parts would be illegal as involving patent misuse.

### IV INFRINGEMENT

A. Browning contends that none of the bows introduced in evidence was manufactured before the complaint was filed. The district court found, however, that "each of the ... compound bow[s] manufactured and sold by the Browning parties is mechanically the same as" the Browning bows that were introduced in evidence. Finding 31.

Browning does not contend that this finding was clearly erroneous, and we cannot say that it is. The alleged error to which Browning refers was harmless.

The cases Browning cites, *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 221 U.S.P.Q. 1 (Fed.Cir.1984), and *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 221 U.S.P.Q. 649 (Fed.Cir.), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240, 224 U.S.P.Q. 616 (1984), simply recite the truism that infringement must be established by comparison of the claims with devices sold before suit.

██ The Bingham defendants complain that the district court held them liable for infringement based solely on (1) their stipulation that they sold compound bows and (2) their advertising infringing bows in their catalog. This is in essence the assertion that proof of infringement requires production of an actual infringing device the accused infringer sold. We know of no such rule of law, and decline to formulate one.

B. Browning also asserts that the Allen claims "are incomprehensible, inaccurate and/or indefinite, and cannot be applied to the accused bows." This is but another attack on the validity of the claims, which we have rejected.

C. Browning's principal argument is that "the evidence proves noninfringe-

ment." The district court found to the contrary, and Browning has not shown that this finding is clearly erroneous. Browning's argument is an attempt to have this court consider the evidence *de novo*, and that is not our role. Browning's reiteration of the evidence in its favor, which the district court rejected, does not establish clear error by the district court.

### V ANTITRUST VIOLATIONS

██ Browning alleges that "ALLEN violated the Sherman Act, particularly 15 U.S.C. § 2, by obtaining the patent through inequitable conduct." This contention necessarily falls in view of our affirmance of the district court's holding that Allen did not engage in inequitable conduct. Moreover, the allegation does not establish a violation of the Sherman Act. *Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*, 812 F.2d 1381, 1 U.S.P.Q.2d 1971 (Fed.Cir. 1987).

### VI THE PATENT LICENSE AGREEMENT

On November 9, 1976, fourteen days after Allen Archery filed an earlier patent infringement suit against Browning Manufacturing Company, the latter sent a signed patent license agreement to Allen Archery's lawyer, with the required $1,000 advance royalty fee. Allen signed the license agreement on January 14, 1977, and the infringement suit was dismissed without prejudice on Allen's motion. On January 17, 1977, Allen Archery sent Browning Manufacturing a letter acknowledging oral modifications of the written license agreement.

Browning Manufacturing paid no further royalties under the license. On October 28, 1977, Allen Archery notified Browning Manufacturing that the license agreement was terminated as of that date because of Browning Manufacturing's "total failure and refusal to perform." Allen then renewed its infringement action against Browning Manufacturing. The district court found that

A license agreement between the parties Allen and BMC [Browning Manufacturing] was consummated and the license term between the parties was from January 14, 1977, through October 28, 1977.

Allen is entitled to recover from BMC the royalties due for the period January 14, 1977, through October 28, 1977.

■ Although Browning Manufacturing argues that no licensing agreement was executed, it has failed to show that the district court's findings, upon which that court's contrary conclusions rest, are clearly erroneous. The letter that Allen Archery sent with the signed license merely noted that Allen Archery would not enforce some provisions of the license, and indicated that Browning Manufacturing might be given more favorable royalty terms in the future. The district court corrrectly concluded that that letter did not abrogate any of Browning Manufacturing's obligations under the license. Conclusions of Law 12–15.

## VII WILLFUL INFRINGEMENT

■ Allen Archery has cross-appealed from the district court's ruling that because Browning's infringement was not willful, this is not an exceptional case in which increased damages or attorney fees should be awarded. In so holding, the district court made the following findings and conclusions:

The Parties were represented by competent patent counsel throughout their association. . . .

. . . .

The court believes Browning acted in a good faith belief the claims in suit were invalid.

The delays involved in bringing the case to trial … must be laid at the door of all concerned.

In the view of the court the facts do not make out a claim of "exceptional case" for either party.

. . . .

In view of the court's findings to the effect that this is not the exceptional case as claimed by the parties, the damages … shall not be trebled under the provisions of 35 U.S.C. § 284 as request-

ed by plaintiff. The infringement was not willful and calculated. While there was no question the Browning Parties knew of the patent, the facts prompting their resistance to the claimed validity of the patent were such that the defenses raised had a basis sufficiently reasonable for exploration and inquiry through the trial process. Consequently, plaintiff is not entitled to the award of reasonable attorneys' fees as an exceptional case. Findings 97–99, Conclusion 17.

Allen Archery asks us to re-examine the evidence and infer "an intent and course of action by Browning and BMC [Browning Manufacturing] from the beginning designed to get Browning bows into the marketplace without paying royalties, and delaying paying royalties as long as possible in the hope that the patent would eventually be held invalid." The evidence may support such an inference, but the district court found to the contrary. The "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a)

does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.

*Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Allen "has not shown the district court's findings on the nature of [Browning's] actions to have been clearly erroneous, thus we need not reach whether the district court abused its discretion in declining to award attorney fees," costs, or increased damages. *Rolls-Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1111, 231 U.S.P.Q. 185, 192 (Fed.Cir.1986).

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.